Lora v. Shanahan

# In the
# United States Court of Appeals
## For the Second Circuit

————

August Term, 2014

No. 14-2343-pr

ALEXANDER LORA,

*Petitioner-Appellee,*

*v.*

CHRISTOPHER SHANAHAN, in his official capacity as New York Field Officer Director for U.S. Immigration and Customs Enforcement; DIANE MCCONNELL, in her official capacity as Assistant Field Office Director for U.S. Immigration and Customs Enforcement; THOMAS S. WINKOWSKI, in his official capacity as Principal Deputy Assistant Director of U.S. Immigration and Customs Enforcement; JEH JOHNSON, in his official capacity as Secretary of the U.S. Department of Homeland Security; LORETTA E. LYNCH, in her official capacity as the Attorney General of the United States;[1] and the U.S. DEPARTMENT OF HOMELAND SECURITY,[2]

*Respondents-Appellants.*

————

Appeal from the United States District Court
for the Southern District of New York.
No. 14 Civ. 2140(AJP) — Andrew J. Peck, *Magistrate Judge*.

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Loretta E. Lynch is automatically substituted for former Attorney General Eric H. Holder, Jr.

[2] The Clerk of the Court is directed to amend the caption as set forth above.

————

Argued: April 20, 2015
Decided: October 28, 2015

————

Before: KEARSE, PARKER, and WESLEY, *Circuit Judges*.

————

The government appeals from a judgment of the United States District Court for the Southern District of New York (Peck, Andrew J., *M.J.*)[3] granting Alexander Lora's petition for a writ of habeas corpus. Lora was detained pursuant to section 1226(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), which mandates detention, while their removal proceedings are pending, of non-citizens who have committed certain criminal offenses. Because section 1226(c) is ambiguous, we defer to the Board of Immigration Authority's ("BIA's") interpretation that detention need not be immediate in order to be mandatory. We also find that the statute applies even if the non-citizen is not released from a custodial sentence. However, we hold that reading section 1226(c) to permit indefinite detention raises significant constitutional concerns, and to avoid them, we construe the statute to contain an implicit temporal limitation on the length of time a detainee can be held before being afforded an opportunity to seek bail. Affirmed.

————

CHRISTOPHER CONNOLLY (Sarah S. Normand, *on the brief*), Assistant United States Attorneys *for* Preet Bharara, United States Attorney for the Southern District of New York, *for Respondents-Appellants*.

---

[3] The parties consented to Magistrate Judge Andrew Peck's jurisdiction over the case under 28 U.S.C. § 636(c). (Dkt. Entry No. 9.)

REBECCA A. HUFSTADER, Legal Intern, LUIS ANGEL REYES SAVALZA, Legal Intern, (Alina Das and Nancy Morawetz, *on the brief*), Washington Square Legal Services, Inc., NYU Law School, New York, NY; Bridget Kessler, Brooklyn Defender Services, Brooklyn, NY, *on the brief, for Petitioner-Appelleee.*

AHILAN ARULANANTHAM, ACLU Immigrants' Rights Project, Los Angeles, CA; Judy Rabinovitz and Anand Balakrishnan, ACLU Immigrants' Rights Project, New York, NY; Alexis Karteron and Jordan Wells, New York Civil Liberties Union Foundation, New York, NY, *on the brief, for Amici Curiae American Civil Liberties Union; New York Civil Liberties Union.*

Andrea Saenz, Immigration Justice Clinic, Benjamin N. Cardozo School of Law, New York, NY, *for Amici Curiae the Bronx Defenders; Detention Watch Network; Families for Freedom; Immigrant Defense Project; Immigrant Legal Resource Center; Kathryn O. Greenberg Immigration Justice Clinic; Make the Road New York; National Immigrant Justice Center; National Immigration Project of the National Lawyers Guild; Neighborhood Defender Service of Harlem; New Sanctuary Coalition of New York City; Northern Manhattan Coalition for Immigrant Rights.*

Farrin R. Anello, Immigrants' Rights/International Human Rights Clinic, Seton Hall University School of Law, Newark, NJ, *for Amici Curiae Professors of Immigration and Constitutional Law.*

————

BARRINGTON D. PARKER, *Circuit Judge*

_____

In 1996, with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Congress significantly expanded the categories of non-citizens subject to mandatory detention pending their removal proceedings.[4] Under section 1226(c) of the revised INA, the Department of Homeland Security ("DHS") is required to detain aliens who have committed certain crimes "when [they are] released." The section contains no explicit provision for bail.[5] When the constitutionality of section 1226(c) was challenged in *Demore v. Kim*, 538 U.S. 510 (2003), statistics showed that removal proceedings were completed within forty-seven days in eighty-five percent of cases in which aliens were mandatorily detained. *Id.* at 529. Emphasizing the relative brevity of detention in most cases, the Court concluded that detention during removal proceedings was "constitutionally permissible." *Id.* at 531.

However, the passage of the IIRIRA, which, among other things, expanded the definition of criminal aliens and required states to provide notice of aliens who violate state criminal laws, combined with a simultaneous rise in immigration to the United States, has resulted in an enormous increase in the number of aliens taken into custody pending removal.[6] By 2009, Immigration and Customs

---

[4] Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C, §§ 303, 305, 110 Stat. 3009–585, 3009–598 to 3009–599; 8 U.S.C. § 1226(c),1231(a) (1994 ed., Supp. V).

[5] Congress adopted section 1226(c) in an effort to strengthen and streamline the process of removing deportable criminal aliens "against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens" and "evidence that one of the major causes of the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 518–19 (2003).

[6] *See* U.S. Department of Justice, Office of the Federal Detention Trustee, *Detention Needs Assessment and Baseline Report: A Compendium of Federal Detention Statistics* 14 (2001), http://www.justice.gov/archive/ofdt/compendium_final.pdf ("The number of aliens ordered detained and taken into the custody of the INS pending removal from the United States or other outcome of an immigration proceeding increased from 72,154 during FY 1994 to 188,547 during FY 2001.").

Enforcement ("ICE") was imprisoning close to four hundred thousand aliens every year, two-thirds of whom were subject to mandatory detention under section 1226(c).[7] Not surprisingly, the time that each immigrant spends in detention has also risen substantially. In 2001, the average time an alien was detained from the initiation of removal proceedings to release or entry of a final order of removal was approximately thirty-nine days.[8] In 2003, the average detention time for most section 1226(c) detainees was approximately forty-seven days. *See Demore*, 538 U.S. at 529. Since then, the situation has worsened considerably. ICE has not provided statistics regarding the length of time that mandatory detainees spend in detention. It is clear, however, that today, a non-citizen detained under section 1226(c) who contests his or her removal regularly spends many months and sometimes years in detention due to the enormous backlog in immigration proceedings.[9] There are thousands of individuals in immigration detention within the jurisdiction of this Court who languish in county jails and in short-term and permanent ICE facilities.

No doubt an appreciable number of these detainees have criminal records that subject them to mandatory deportation. Many in this group are dangerous or have no ties to a community. Congress was quite clear that it wanted such individuals detained pending deportation. On the other hand, this group includes non-citizens who, for a variety of individualized reasons, are not dangerous, have strong family and community ties, are not flight

---

[7] *See* Dora Schriro, U.S. Department of Homeland Security, Immigration and Customs Enforcement, *Immigration Detention Overview and Recommendations* 2 (2009), http://www.ice.gov/doclib/about/offices/odpp/pdf/ice-detention-rpt.pdf (stating that, as of report's publication date, over 370,000 noncitizens had been detained in the preceding fiscal year and estimating that 66% of detained noncitizens are held pursuant to mandatory detention).

[8] *Detention Needs Assessment and Baseline Report: A Compendium of Federal Detention Statistics*, *supra* note 6, at 15 n.41.

[9] *See* Mark Noferi, *Cascading Constitutional Deprivation: The Right To Appointed Counsel For Mandatorily Detained Immigrants Pending Removal Proceedings*, 18 Mich. J. Race & L. 63, 80–82 (2012) (discussing how immigrants may face prolonged detention as average case processing times now exceed one year).

risks and may have meritorious defenses to deportation at such time as they are able to present them.

One such detainee is Alexander Lora, a lawful permanent resident ("LPR") and citizen of the Dominican Republic, who was convicted of drug related offenses, sentenced to probation, and taken into custody by ICE agents pursuant to section 1226(c), over three years into his five-year probation term. After four months in immigration custody, Lora petitioned for a writ of habeas corpus. He contended, among other things, that he was eligible to apply for bail because the mandatory detention provision of section 1226(c) did not apply to him because he had not been taken into custody "when released" and that indefinite incarceration without an opportunity to apply for bail violated his right to due process.

His petition was granted by the District Court (Peck, *M.J.*). Magistrate Judge Peck agreed with Lora's statutory argument, did not reach his constitutional argument, and ordered that Lora be afforded a bail hearing. At that hearing, the government did not contest his eligibility for bail. Following the parties' stipulation that Lora, who was gainfully employed and had substantial family ties to his community, was not dangerous and posed no risk of flight, the immigration judge ("IJ") ordered Lora's release conditioned on his posting a $5000 bond. This appeal followed.

The main issue of statutory construction driving this appeal is whether, as Lora argues and the District Court ruled, the "when released" provision of section 1226(c) applies only if the government takes an alien into immigration custody immediately following his release from a custodial sentence or whether, as the government argues, an alien is subject to mandatory detention even if DHS does not detain him immediately upon release. On this issue we agree with the government and conclude that Lora was subject to mandatory detention under section 1226(c).

However, we agree with Lora's constitutional argument. While the Supreme Court has held "that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings," *Demore*, 538 U.S. at 526, it has made clear that the indefinite detention of a non-citizen "raise[s] serious constitutional concerns" in that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects," *Zadvydas v. Davis*, 533 U.S. 678, 682, 690 (2001). Following this guidance, we hold that, in order to avoid significant constitutional concerns surrounding the application of section 1226(c), it must be read to contain an implicit temporal limitation. In reaching this result, we join every other circuit to have considered this issue.[10] Specifically, we join the Ninth Circuit in holding that mandatory detention for longer than six months without a bond hearing affronts due process. *See Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013).[11] Accordingly, we affirm the District Court's decision to grant the petition.

## BACKGROUND

Lora entered the United States as a lawful permanent resident ("LPR") from the Dominican Republic in 1990 when he was seven years old. For the next nineteen years, Lora lived continuously in Brooklyn, New York where he has a large family network, including his U.S. citizen fiancée, chronically-ill U.S. citizen mother, LPR father, and U.S. citizen brother and sister. Lora has two sons whom he supports: a two-year-old son who is a U.S. citizen and lives in the United States and an eight-year-old son who lives in the Dominican Republic. During the nearly two decades that Lora has spent in this country, he attended school and worked in grocery stores to support himself and his family.

---

[10] The government, too, agrees that aliens cannot be detained indefinitely. Gov't Reply Br. at 25.

[11] Lora was detained for five-and-a-half months, and it is certain that, were he to be returned to custody, his total period of detention would exceed six months.

In July 2009, while working at a grocery store, Lora was arrested with one of his co-workers and charged with several New York state offenses relating to cocaine possession. In July 2010, Lora pled guilty to criminal possession of cocaine with intent to sell, criminal possession of cocaine with an aggregate weight of one ounce or more, and criminal use of drug paraphernalia in violation of New York Penal Law §§ 220.16, 220.50. Lora was sentenced to five years of probation. He was not sentenced to any period of incarceration and he did not violate any of the conditions of his probation.

On November 22, 2013, over three years into his probation term, ICE agents arrested Lora in an early morning raid in the Brooklyn neighborhood where he was living at the time. After the agents took Lora into custody, he was transferred to Hudson County Correctional Center in Kearny, New Jersey, where he was detained without bond. Lora was charged with removability under INA § 237(a)(2)(B), 8 U.S.C. § 1227(a)(2)(B), for having been convicted of a crime involving a controlled substance, and INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of an aggravated felony, namely, trafficking in a controlled substance as defined in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B). DHS took the position that Lora's removal charges rendered him subject to mandatory detention under section 1226(c) and that he was not eligible for a bail hearing.

While his removal proceedings were pending, Lora moved in New York state court to set aside his conviction. His motion was granted on consent and in March 2014, his original plea and sentence were vacated. Lora was then permitted to plead to a minor offense—a single count of third degree possession of a controlled substance—and was re-sentenced to a conditional discharge imposed *nunc pro tunc* to July 21, 2010. With this new sentence, Lora now has a strong argument for cancellation of removal under 1226(c) because third degree possession is a Class B felony under N.Y. Penal

Law § 220.16(12) and does not qualify as an aggravated felony for immigration purposes under 8 U.S.C. §§ 1227(a)(2)(A)(iii); 1228b.[12] However, he is still technically subject to mandatory detention under section 1226(c) because he had been convicted of a crime involving a controlled substance under 8 U.S.C. § 1227(a)(2)(B)(i). In March 2014, Lora requested that he be permitted to file an application for cancellation of removal and that he be afforded a bail hearing. The IJ granted Lora's request to file for cancellation of removal but denied Lora's request for a bail hearing.[13]

At the same time, Lora filed a petition for a writ of habeas corpus, challenging his continued detention. Lora argued that he was not subject to mandatory detention under section 1226(c), which requires an alien to be taken into DHS custody "when the alien is released" because DHS did not take him into custody at the precise time "when" he was released on his underlying convictions, but years later, and that he could not have been detained when he was "released" because he was never incarcerated or kept in physical custody following his triggering conviction. Lora also argued that his continued imprisonment without a bail hearing raised constitutional concerns under the Due Process Clause of the Fifth Amendment in light of his substantial defenses to removal and the strong possibility of his indefinitely prolonged detention. Finally, Lora raised the alternative argument that his continued detention

---

[12] See 8 U.S.C. § 1229b(a) ("The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien--(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony."). Lora was admitted to the United States in 1990, has worked and resided in this country ever since, and has strong family ties and responsibilities including serving as the primary caretaker of his U.S. citizen son. See March 26, 2014, Declaration of Talia Peleg, Esq. ("Given Mr. Lora's residence in the United States as a green card holder, his strong family and community ties here, and other relevant factors, it is my opinion that he has a strong defense to his deportation.").

[13] Lora's cancellation of removal proceedings are still pending, but because he is no longer detained, his removal proceedings have been taken off of the expedited track. Due to a backlog in non-detained removal proceedings, his merits hearing on his application for cancellation of removal is currently scheduled for January 2018.

was not in the public interest, and that he should be released on parole.

The District Court granted Lora's petition, holding that section 1226(c)'s "clear language" requires that DHS detain aliens immediately upon their release from criminal custody, and because Lora was not detained until years after the criminal conviction that formed the basis of his removal charge, he was not subject to mandatory detention. In the alternative, the District Court also found that Lora was not subject to mandatory detention because he did not serve a post-conviction custodial sentence in connection with his criminal offense and so was never "released" from custody. The District Court directed the government to provide Lora with an individualized bail hearing by May 15, 2014, which was the date of his next hearing before the IJ. The government did not seriously dispute that Lora was neither a flight risk nor a danger to the community and the IJ ordered that Lora be released from custody after posting a $5000 bond. Insofar as the record reveals, since being admitted to bail, Lora remains gainfully employed, tied to his community and poised to contest his removability once DHS clears its backlog sufficiently to afford him a hearing.

The government appeals, contesting the District Court's interpretation of section 1226(c). The government maintains that, even though Lora no longer stands convicted of an aggravated felony, he is still deportable and subject to mandatory detention as a result of his conviction under a law relating to a controlled substance. Notably, the government does not take the position that it should be permitted to hold immigrants indefinitely. Rather, it contends that due process requires a "fact-dependent inquiry" as to the allowable length of detention and there should be no bright-line rule for when detention becomes presumptively unreasonable. Gov't Reply Br. at 25.

# DISCUSSION

When the government seeks removal of an alien, an IJ can ordinarily conduct a bail hearing to decide whether the alien should be released or imprisoned while proceedings are pending. However, 8 U.S.C. § 1226(c) requires the mandatory detention, for the duration of their removal proceedings, of aliens convicted of certain crimes. The portion of section 1226(c)(1) applicable to Lora provides:

> (1) Custody
> The Attorney General shall take into custody any alien who . . .
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii),(A)(iii), (B), (C), or (D) of this title [*i.e.* specified offenses including controlled substance offenses]; . . . *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (2) Release
> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides . . . that release of the alien from custody is necessary [for certain witness protection purposes], and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. . . .

8 U.S.C. § 1226(c)(1)–(2) (emphasis added).

Thus, detention without a bail hearing under section 1226(c) is mandatory unless DHS determines that an alien falls within a narrow witness-protection exception not applicable here.  *See* 8 U.S.C. § 1226(c)(2).  However, the clause in paragraph (1), "when the alien is released," has been the source of persistent confusion and extensive litigation in this Circuit and elsewhere.

This case calls for us to decide: (1) whether an alien is subject to mandatory detention only if he or she has been sentenced to and "released" from prison or some form of physical custody; and (2) whether an alien is subject to mandatory detention if there is a gap between the alien's being on post-conviction release and his or her confinement by DHS.[14]  Although these are issues of first impression for this Court, other circuits as well as numerous district courts, both within and outside of this Circuit, have addressed the issue but remain divided on how to apply section 1226(c).[15]

**Meaning of "Released"**

The government argues that the Court should reject the District Court's holding that Lora is not subject to mandatory detention because he was never "released" from a post-conviction sentence of incarceration.  The government relies on two BIA cases

---

[14] Because this appeal raises questions of law as to the interpretation of 8 U.S.C. § 1226(c), we review the District Court's decision on how to interpret the statute *de novo.  See Puello v. Bureau of Citizenship & Immigration Servs.*, 511 F.3d 324, 327 (2d Cir. 2007).

[15] *Compare Olmos v. Holder*, 780 F.3d 1313, 1324 (10th Cir. 2015) (holding that even if there was a delay after alien was released before the alien was taken into immigration custody, mandatory detention still applies), *and Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 156–61 (3d Cir. 2013) (holding that immigration officials do not lose authority to impose mandatory detention if they fail to do so "when the alien is released"), *and Hosh v. Lucero*, 680 F.3d 375, 378–84 (4th Cir. 2012) (holding that a criminal alien who is not immediately taken into immigration custody after his release from criminal custody is not exempt from section 1226(c)'s mandatory detention provision), *with Castañeda v. Souza*, 769 F.3d 32 (1st Cir. 2014) (interpreting "when" as signifying that DHS can subject an alien to mandatory detention only if it detains the alien at or around the time the alien is released from criminal custody), *reh'g en banc granted, opinion withdrawn*, Jan. 23, 2015.

in which the Board determined that the word "released" in section 1226(c) includes pre-conviction release from arrests.[16] *See In re Kotliar*, 24 I. & N. Dec. 124, 125 (2007) ("[W]e have held that an alien who is released from criminal custody[,] . . . including from an arrest preceding a conviction, . . . is subject to mandatory detention."); *In re West*, 22 I. & N. Dec. 1405, 1410 (2000). *West* and *Kotliar* also suggest that the alien must be released from some form of physical custody for § 1226(c)(1) to apply. *See, e.g., West*, 22 I & N. Dec. at 1410 ("[W]e construe the word 'released' . . . to refer to a release from physical custody."). The government urges that, consistent with these cases, "released" can refer to a release from pre-conviction confinement, such as an arrest.

Because we find that section 1226(c)(1) unambiguously mandates detention in this circumstance for other reasons, we need not confront the BIA decisions or the government's interpretation of them. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). "[D]eference to [an agency's] statutory interpretation is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) (*citing INS v. Cardoza–Fonseca*, 480 U.S. 421, 446–48 (1987)). A natural reading of the statute suggests that the term "released" in section 1226(c) means not incarcerated, not imprisoned, not detained, i.e., not in physical custody. *See Demore*, 538 U.S. at 513 ("Congress[ was] justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings . . . ."). Thus, detention is mandated once an alien is convicted of a crime described in section 1226(c)(1) and is not incarcerated, imprisoned, or otherwise detained. This interpretation avoids nullifying the provision in section 1226(c)(1) that DHS "shall take into custody any alien who . . . is inadmissible [or] is deportable by reason of having committed [a

---

[16] The Third Circuit has deferred to the BIA's interpretation and has held that a pre-conviction release following arrest satisfies section 1226(c)'s release requirement. *See Sylvain*, 714 F.3d at 161.

certain type of crime] . . . when the alien is released, *without regard to whether the alien is released on parole, supervised release, or probation*" (emphasis added)—which clearly contemplates non-carceral sentences. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (noting that statutes should be read to avoid making any provisions "superfluous, void, or insignificant" (internal quotation marks omitted)). Moreover, where Congress has intended to limit detention to aliens sentenced to a certain prison term, it has done so explicitly. *See, e.g.*, 8 U.S.C. § 1182(a)(2) (alien is not eligible for a visa or admission if the alien has committed a crime involving moral turpitude for which a sentence of at least six months has been imposed). Accordingly, we conclude that an alien who has been convicted of a qualifying crime under section 1226(c) is subject to mandatory immigration detention, whether he is sentenced to a prison term or to probation.

**"When" the Alien is Released**

The government next argues that the District Court wrongly interpreted the word "when" in the "when the alien is released" clause of section 1226(c) as imposing a temporal limit on DHS's obligation to mandatorily detain non-citizens. Because Lora was not taken into immigration custody until more than three years after his July 2010 criminal conviction and sentencing, the District Court found that he was outside the reach of the statute and so was eligible for bail.

This single issue consists of two inquiries: (1) whether "when . . . released" contemplates detainment immediately upon release, or merely at some time after release, and (2) whether, notwithstanding the meaning of "when . . . released," the statute imposes a temporal restriction on the agency's authority and duty to detain an alien. Because we defer to the BIA's interpretation that "when . . . released" does not impose a temporal restriction on the agency's authority and duty to detain an alien, we need not decide the meaning of "when . . . released."

14

Over a decade ago, the BIA, the agency charged with administering this statute, considered a challenge from a detainee to his mandatory detention. *See In re Rojas*, 23 I. & N. Dec. 117 (BIA 2001). The detainee argued that because he had not been taken into custody "when . . . released," as directed by section 1226(c)(1), he was not subject to mandatory detention under section 1226(c)(2). *Id.* at 118. The BIA declined to consider whether "when . . . released" meant immediately upon release or merely sometime after the detainee was released, and instead agreed with the government that regardless of the proper interpretation of "when . . . released," the text, structure, history, and purpose of the statute all suggested that Congress did not intend the "when . . . released" clause to limit the authority of agents to detain an alien. *Id.* at 121–25. Under the BIA's interpretation, "when . . . released" refers to the time at which the duty to detain arises, and does not place a temporal limit on the agents' authority to detain an alien—thus, 1226(c)(2) mandates detainment even if DHS does not detain the alien immediately upon release. *Id.* at 123–24. This has been referred to in this Circuit as the "duty-triggering" construction, while Lora argues for what has been referred to as the "time-limiting" construction. *See Straker v. Jones*, 986 F. Supp. 2d 345, 352–53 (S.D.N.Y. 2013).

Because we are faced with an administrative agency's interpretation of a statute, we follow the two-step *Chevron* inquiry. *See Chevron*, 467 U.S. at 842–44. If we find, based on the plain language of the statute, that "the intent of Congress is clear, that is the end of the matter." *Id.* at 842. However, if we find that the statute is silent or ambiguous with respect to the specific issue, we will proceed to the second step: determining "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. We defer to the BIA's interpretation so long as it is "reasonable, and not 'arbitrary, capricious, or manifestly contrary to the statute.'" *Adams v. Holder*, 692 F.3d 91, 95 (2d Cir. 2012) (quoting *Chevron*, 467 U.S. at 844). The government argues that, because the statute is

ambiguous, the District Court should have followed the BIA's reasonable interpretation. We agree.

At the first step of the *Chevron* inquiry, we have little trouble concluding that it is ambiguous whether "when . . . released" should be given the "duty-triggering" construction or the "time-limiting" construction. The BIA agrees. *Rojas*, 23 I. & N. Dec. at 120. And the Supreme Court has long recognized that the word "when" may alternatively mean "the precise time when a particular act must be performed," or "the occurrence which shall render that particular act necessary." *United States v. Willings*, 8 U.S. 48, 55 (1807).

As the BIA recognized, it is unclear from the text of section 1226(c) whether the "when . . . released" clause is part of the definition of aliens subject to mandatory detention. *Rojas*, 23 I. & N. Dec. at 120. Section 1226(c) requires that DHS take custody of aliens convicted of four categories of predicate criminal or terrorist acts and offenses ("A" through "D") when they are released and that DHS may not "release an alien described in paragraph (1)" unless that alien falls under an exception for protected witnesses. But it is not clear whether the phrase "an alien described in paragraph (1)" refers to the aliens described in categories "A" through "D," as the government argues, or to aliens who both qualify under these subcategories and were taken into immigration custody "when . . . released" from custody, as Lora argues. Noting this difficulty, the Tenth Circuit has described how the "when . . . released" phrase can be considered adverbial, modifying the opening verb phrase "the [DHS] shall," or it can be considered adjectival, modifying the noun phrases in categories (A) through (D). *See Olmos*, 780 F.3d at 1318–19.

Because we find that Congress has not directly spoken on the meaning or application of "when . . . released" in this statute, we must consider whether the BIA's interpretation of section 1226(c) is permissible and thus entitled to *Chevron* deference. *See Khouzam v. Ashcroft*, 361 F.3d 161, 164 (2d Cir. 2004). In *Rojas*, the alien argued

that he was not subject to mandatory detention under section 1226(c) because immigration authorities did not take him into custody until two days after his release. To resolve the statute's ambiguity, the BIA used four separate approaches to analyze section 1226(c): (1) the ordinary meaning of the statute's language, although that language was ambiguous;[17] (2) the overall statutory context and goals; (3) the statute's predecessor provisions; and (4) practical considerations. *Rojas*, I. & N. Dec. at 121–24. The BIA, while not deciding whether "when . . . released" meant immediately upon release or something else, concluded that "the duty to detain is not affected by the character of an alien's release from criminal incarceration," *id.* at 121, and "that [the alien was] subject to mandatory detention pursuant to section [1226(c)] of the Act, despite the fact that he was not taken into [immigration] custody immediately upon his release from state custody," *id.* at 127.[18] Consistent with *Chevron*, we are not convinced that the interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Adams,* 692 F.3d at 95 (internal quotation marks and citation omitted). As the BIA explained in *Rojas*, "[i]t is difficult to conclude that Congress meant to premise the success of its mandatory detention scheme on the capacity of [DHS] to appear at the jailhouse door to take custody of an alien at the precise moment of release." 23 I. & N. Dec. at 128.

Moreover, the BIA's interpretation of section 1226(c) follows Supreme Court precedent establishing that statutes providing "that the Government 'shall' act within a specified time, without more," are not "jurisdictional limit[s] precluding action later." *Barnhart v.*

---

[17] *See Rojas*, 23 I. & N. Dec. at 120 ("We find the statutory provision, when read in isolation, to be susceptible to different readings.").

[18] As the Supreme Court explained in *Demore*, 538 U.S. at 518, Congress adopted section 1226(c) in response to its frustration with criminal aliens' ability to avoid deportation if they were not already in DHS custody when removal proceedings were completed and its concern that criminal aliens who are not detained continue to commit crimes. *See* S. Rep. No. 104-48, 1995 WL 170285, at *14, *23 (1995). The BIA relied on this history and concluded, "we discern that the statute as a whole is focused on the removal of criminal aliens in general, not just those coming into [INS] custody 'when . . . released' from criminal incarceration." *Rojas*, 23 I. & N. Dec. at 122 (second alteration in original).

*Peabody Coal Co.*, 537 U.S. 149, 158 (2003). "[I]f a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 63 (1993); *see also United States v. Montalvo-Murillo*, 495 U.S. 711 (1990) (holding that the government may detain criminal defendants leading up to trial even if they do not comply with the relevant statute's command that a judicial officer "shall" hold a bail hearing "immediately upon the person's first appearance" before the officer); *Sylvain*, 714 F.3d at 157–59 (applying *Barnhart* and *Montalvo-Murillo* to section 1226(c) and concluding that "the government retains authority under [section 1226(c)] despite any delay").

Finally, the BIA's interpretation has the added benefit of accounting for practical concerns arising in connection with enforcing the statute. Particularly for criminal aliens in state custody, it is unrealistic to assume that DHS will be aware of the exact timing of an alien's release from custody, nor does it have the resources to appear at every location where a qualifying alien is being released. State and local law enforcement may also have difficulty determining citizenship, since records of arrests and convictions may be incomplete in this regard. Accordingly, we join the Third, Fourth, and Tenth Circuits in holding that DHS retains its authority and duty to detain an alien even if not exercised immediately upon the alien's release.[19] Regardless of whether "when . . . released" contemplates detainment immediately upon release or merely sometime after release, we adopt the "duty-triggering" construction, and hold that an alien may be subject to

---

[19] *See, e.g., Sylvain*, 714 F.3d at 161 ("[E]ven if the statute calls for detention 'when the alien is released,' . . . nothing in the statute suggests that officials lose authority if they delay."); *Hosh*, 680 F.3d at 382 ("The negligence of officers, agents, or other administrators, or any other natural circumstance or human error that would prevent federal authorities from complying with § 1226(c), cannot be allowed to thwart congressional intent and prejudice the very interests that Congress sought to vindicate.").

mandatory detention even where DHS does not immediately detain the alien after release from criminal custody.[20]

**Whether 8 U.S.C. § 1226(c) Authorizes Mandatory Detention Beyond Six Months Without a Bail Hearing**

Because the District Court decided in Lora's favor on statutory grounds, it did not reach his constitutional argument.[21] As noted, Lora also argued below and argues to this Court that his indefinite detention without being afforded a bond hearing would violate his right to due process. We agree. Significantly, the distance between Lora and the government on this issue is not large: the government does not advocate for indefinite detention nor does it contest the view that, in order to avoid serious constitutional concerns, an implicit time limitation must be read into section 1226(c).

It is well-settled that the Fifth Amendment entitles aliens to due process in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (considering a challenge to post-removal detention). As noted, more than a decade ago, in *Zadvydas*, the Supreme Court signaled its concerns about the constitutionality of a statutory scheme that ostensibly authorized indefinite detention of non-citizens. *Id.* Two years later, when the court upheld the constitutionality of section

---

[20] Lora also argues that the BIA's analysis is unreasonable in light of the constitutional concerns it raises by giving the government limitless authority to deny bond hearings. However, in making this argument, Lora misconstrues Justice Kennedy's concurrence in *Demore*, which observed that due process concerns could arise if there was an unreasonable delay by ICE in deportation proceedings. 538 U.S. at 532 (Kennedy, J., concurring). Justice Kennedy's observations were relevant to how long an alien is kept in custody, not when the custody must start or whether there may be a gap between release from criminal custody and commencement of immigration custody. *Id.* at 532–33.

[21] The issue was briefed by the parties below, and we may affirm a district court's decision "on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely." *See Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 387 n.2 (2d Cir. 2000) (per curiam) (internal quotation marks omitted).

19

1226(c) in *Demore v. Kim*, it emphasized that, for detention under the statute to be reasonable, it must be for a brief period of time. *See, e.g.*, 538 U.S. at 528 (detention permissible because, as compared to *Zadvydas*, "the detention here is of a much shorter duration"). Justice Kennedy explained in his concurrence that "[w]ere there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532–33 (Kennedy, J., concurring).

These cases clearly establish that mandatory detention under section 1226(c) is permissible, but that there must be some procedural safeguard in place for immigrants detained for months without a hearing. Accordingly, we join every other circuit that has considered this issue, as well as the government, in concluding that in order to avoid serious constitutional concerns, section 1226(c) must be read as including an implicit temporal limitation. *See, e.g., Rodriguez*, 715 F.3d at 1137 ("[I]n several decisions over the past decade . . . we have consistently held that *Demore's* holding is limited to detentions of brief duration."*); Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011) (applying canon of constitutional avoidance to "conclude that the statute implicitly authorizes detention for a reasonable amount of time"); *Ly v. Hansen*, 351 F.3d 263, 267–68, 271 (6th Cir. 2003) (noting that *Demore* "is undergirded by reasoning relying on the fact that [the alien in the case], and persons like him, will normally have their proceedings completed within a short period of time" and the case must be understood as only authorizing detention for brief periods of time).

However, while all circuits agree that section 1226(c) includes some "reasonable" limit on the amount of time that an individual can be detained without a bail hearing, courts remain divided on how to determine reasonableness. This Court has not yet had the opportunity to decide which approach to follow. The first approach,

20

employed by the Third and Sixth Circuits and favored by the government, calls for a "fact-dependent inquiry requiring an assessment of all of the circumstances of any given case," to determine whether detention without an individualized hearing is unreasonable. *Diop*, 656 F.3d at 234; *see also Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 475 n.7 (3d Cir. 2015) (explaining "the highly fact-specific nature" of the balancing framework). Under this approach, every detainee must file a habeas petition challenging detention, and the district courts must then adjudicate the petition to determine whether the individual's detention has crossed the "reasonableness"threshold, thus entitling him to a bail hearing.

In contrast, the second approach, adopted by the Ninth Circuit, is to apply a bright-line rule to cases of mandatory detention where the government's "statutory mandatory detention authority under Section 1226(c) . . . [is] limited to a six-month period, subject to a finding of flight risk or dangerousness." *Rodriguez*, 715 F.3d at 1133. We believe that, considering the relevant Supreme Court precedent, the pervasive confusion over what constitutes a "reasonable" length of time that an immigrant can be detained without a bail hearing, the current immigration backlog and the disastrous impact of mandatory detention on the lives of immigrants who are neither a flight risk nor dangerous, the interests at stake in this Circuit are best served by the bright-line approach.

First, *Zadvydas* and *Demore,* taken together, suggest that the preferred approach for avoiding due process concerns in this area is to establish a presumptively reasonable six-month period of detention. In *Zadvydas*, the Court held that six months was a "presumptively reasonable period of detention" in a related context, namely post-removal-determination detention. 533 U.S. at 700–01 (finding that there was "reason to believe . . . that Congress previously doubted the constitutionality of detention for more than six months"). After that point, "once the alien provides good reason to believe that there is no significant likelihood of removal in the

21

reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* In *Demore*, the Court held that section 1226(c) authorized mandatory detention only for the "limited period of [the alien's] removal proceedings." 538 U.S. at 531. At that time (2003), the "limited period" referred to "last[ed] roughly a month and a half in the vast majority of cases in which [section 1226(c) was] invoked, and about five months in the minority of cases in which the alien cho[se] to appeal." *Id.* at 529–30; *see Rodriguez*, 715 F.3d at 1138 ("As a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months.").

Secondly, the pervasive inconsistency and confusion exhibited by district courts in this Circuit when asked to apply a reasonableness test on a case-by-case basis weighs, in our view, in favor of adopting an approach that affords more certainty and predictability. Notably, the Supreme Court has recognized that bright-line rules provide clear guidance and ease of administration to government officials. *See, e.g., Zadvydas*, 533 U.S. at 700–01 (adopting six-month rule "for the sake of uniform administration," while also noting that it would limit the need for lower courts to make "difficult judgments"). *Compare, e.g., Martin v. Aviles*, No. 15 Civ. 1080(AT)(AJP), 2015 WL 3929598, at *2–3 (S.D.N.Y. June 15, 2015) (holding an alien for over a year without a bond hearing violated his due process rights), *and Minto v. Decker*, No. 14 Civ. 07764(LGS)(KNF), 2015 WL 3555803, at *7 (S.D.N.Y. June 5, 2015) ("Because Petitioner's detention has exceeded twelve months—in the absence of any evidence that Petitioner might be a flight risk or a danger to the community—he is entitled to an individualized bond hearing."), *and Monestime v. Reilly*, 704 F. Supp. 2d 453, 458 (S.D.N.Y. 2010) (ordering bond hearing after eight months detention), *and Scarlett v. DHS*, 632 F. Supp. 2d 214, 223 (W.D.N.Y. 2009) (five years detention unreasonable), *with Johnson v. Orsino*, 942 F. Supp. 2d 396 (S.D.N.Y. 2013) (fifteen month detention not unreasonable), *and Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 194 (W.D.N.Y. 2010)

(nearly three years of detention not unreasonable). Adopting a six-month rule ensures that similarly situated detainees receive similar treatment. Such a rule avoids the random outcomes resulting from individual habeas litigation in which some detainees are represented by counsel and some are not, and some habeas petitions are adjudicated in months and others are not adjudicated for years.

Moreover, while a case-by-case approach might be workable in circuits with comparatively small immigration dockets, the Second and Ninth Circuits have been disproportionately burdened by a surge in immigration appeals and a corresponding surge in the sizes of their immigration dockets.[22] With such large dockets, predictability and certainty are considerations of enhanced importance and we believe that the interests of the detainees and the district courts, as well as the government, are best served by this approach.

Finally, without a six-month rule, endless months of detention, often caused by nothing more than bureaucratic backlog, has real-life consequences for immigrants and their families. Lora is one such example. As noted, he is a LPR who has resided in and been extensively tied to his community for twenty-five years. During his years in this country, Lora has remained gainfully employed and has attended school. He is in jeopardy of removal as a consequence of what now stands as a conviction in 2009 for third degree possession of a controlled substance for which he received a conditional discharge. No principled argument has been mounted for the notion that he is either a risk of flight or is dangerous. Instead, the record suggests that Lora is an excellent candidate for cancellation of removal pursuant to 8 U.S.C. § 1229b(a). He is the primary caretaker of a two-year-old U.S. citizen son who was placed in foster care while Lora was in detention; he has no arrest record aside from this non-violent drug offense conviction; he has been

---

[22] *See* John R.B. Palmer, *The Nature and Causes of the Immigration Surge in the Federal Courts of Appeals: A Preliminary Analysis*, 51 N.Y. L. Sch. L. Rev. 13, 14 (2006).

gainfully employed for over two decades while he has resided in the United States.[23]

For these reasons, we hold that, in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention. Following the Ninth Circuit, we also hold that the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community. *Rodriguez*, 715 F.3d at 1131.[24]

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the District Court.

---

[23] Amici in this case cite multiple other examples of immigrants whose lives and whose families' lives have been upended by DHS's enforcement of section 1226(c) without judicially imposed procedural safeguards. There is the case of a LPR who was arrested by ICE, without warning, nearly nine years after the most recent conviction for which ICE charged him as deportable, and five days before his girlfriend gave birth to their second child. He was detained for eleven months without a bond hearing before his habeas petition was finally decided while his companion struggled to raise his three children in a homeless shelter. *See Baker v. Johnson*, No. 14 Civ. 9500(LAP), 2015 WL 2359251 (S.D.N.Y. May 15, 2015). Amici also cite the example of an immigrant from Trinidad and Tobago who was detained by ICE without bond following his arrest on a dismissed criminal charge for seven months before the district court ordered that he be provided with a bond hearing. *See Straker*, 986 F. Supp. 2d 345. During those seven months, his daughter was left without a primary caretaker. The fact that there are over 30,000 immigrants in ICE custody in the United States on an average day and many of those individuals are parents and primary caregivers of U.S. citizen children gives some indication of section 1226(c)'s scope and potential impact. We are confident that the government also does not wish for the type of outcomes described above and does not favor a regime that perpetuates them.

[24] In the present case, the length of Lora's detention fell just shy of the six-month mark: he was detained by ICE on November 22, 2013, and granted bond on May 8, 2014. Because of the length of Lora's appeal, this Court sees no reason to remand this case so as to implicate the six-month rule.