RICHARD J. SULLIVAN, District Judge:
Petitioner Karim Poonjani, who is currently in immigration custody, brings this petition for a writ of habeas corpus seeking relief in the form of an immediate bond hearing before an immigration judge. (Doc. No. 1.) For the reasons set forth below, the petition is DENIED.
I. BACKGROUND [2]
Petitioner, a native of Pakistan, arrived in the United States through O'Hare International Airport on or about September 12, 2000, at which time he attempted to pass through Customs with a fake passport. (Pet. ¶ 6.) Although Petitioner was detained and charged with being an arriving alien "subject to removal from the United States," an asylum officer determined that Petitioner had a credible fear that he would be persecuted if he returned to Pakistan. (Doc. No. 1-1.) Accordingly, Petitioner was placed into administrative proceedings so that he could pursue an asylum claim and was eventually released on parole, at which point he moved to Belleville, New York. (Pet. ¶¶ 6-8.) Nevertheless, although Petitioner's immigration proceedings were transferred from Illinois to New York to accommodate his move, Petitioner did not appear for his asylum hearing and was ordered removed in absentia by an immigration judge on July 12, 2001. (Id. ¶ 8.)
Although Petitioner remained in the United States for nearly fifteen years, on December 3, 2015, he was arrested and charged in the United States District Court for the Southern District of New York for failing to report cash income to the Internal Revenue Service. (Id. ¶ 10); see also United States v. Poonjani , 16-cr-792 (VB). On January 11, 2017, Petitioner pleaded guilty before Judge Briccetti, who sentenced him on April 17, 2017 to time served (of one day) followed by one year of supervised release; Judge Briccetti also ordered Petitioner to pay restitution in the amount of $51,698 to the Internal Revenue Service. (Id. ¶¶ 11, 13.)
On January 17, 2017, after his guilty plea but before his sentencing, Petitioner was arrested and detained by immigration authorities. (Id. ¶ 12.) Petitioner filed a motion to reopen his removal proceedings and an application for asylum, withholding of removal, and protection under the Convention Against Torture on March 30, 2017, based on the risk of persecution and violence that he faced in Pakistan as a result of his Ismaili Shia faith. (Id. ¶ 14.) Although an immigration judge *646 granted Petitioner's motion to reopen his immigration proceedings for the purpose of evaluating Petitioner's application (id. ), the immigration judge ultimately denied Petitioner's application on November 27, 2017, and ordered him removed to Pakistan (see Doc. No. 26-2). On December 5, 2017, Petitioner appealed that decision to the Board of Immigration Appeals ("BIA") (see Doc. No 26-3), which granted his appeal on May 3, 2018, and remanded his application to an immigration judge for further proceedings (Doc. No. 38-1). Petitioner's application currently remains pending.
Meanwhile, on July 17, 2017, Petitioner filed a motion for a bond hearing with the New York Immigration Court. (Pet. ¶ 15.) The immigration judge denied the motion on July 25, 2017. (Id. ) Shortly thereafter, on August 11, 2017, Petitioner filed the instant Petition, seeking a bond hearing under the Second Circuit's decision in Lora v. Shanahan , 804 F.3d 601 (2d Cir. 2015), on the ground that he had been detained for more than six months. (Pet. ¶ 17.) On August 15, 2017, the Court ordered the government to show cause why the Petition should not be granted (Doc. No. 3), and on September 11, 2017, the government responded with a motion to dismiss the petition, asserting that Petitioner's argument that he had been detained for six months without a bond hearing was premature and would not ripen until October 25, 2017. (Doc. No. 11.) Petitioner submitted a reply brief, which also served as his brief in opposition to the government's motion to dismiss, on September 18, 2017. (Doc. No. 13.)
On December 4, 2017, following the issuance of the subsequently-reversed order of removal and the government's concession that its motion to dismiss the Petition was likely moot because Petitioner had clearly been detained for longer than six months, the Court directed the government to respond to the Petition and scheduled a hearing for January 5, 2017. (Doc. No. 25.) The government submitted its response on December 8, 2017 (Doc. Nos. 26-27), and Petitioner tiled his reply on December 15, 2017 (Doc. No. 28). On January 5, 2018, the Court heard oral argument from both parties.
During oral argument, and throughout the first round of briefing on the Petition, both parties devoted substantial attention to the application of the Second Circuit's decision in Lora to this case. In Lora , the Second Circuit held that 8 U.S.C. § 1226(c), which requires the detention of aliens living in the United States who have committed certain criminal offenses, includes an implicit six-month limitation on the amount of time an alien may be detained without an individualized bond hearing. 804 F.3d at 616. In doing so, the Circuit relied upon the canon of constitutional avoidance, "concluding that in order to avoid serious constitutional concerns," it was proper to read into the statute a six-month limit on detention without a bond hearing. Id. at 614 ; see also id. at 616 ("[W]e hold that, in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention."). Petitioner, unsurprisingly, maintained that Lora applied to his detention pursuant to Section 1225(b) and required that he receive a bond hearing, while the government argued that the case did not extend to Section 1225(b) detainees.
In February, however, the Supreme Court effectively overturned Lora when it rejected a similar application of the canon of constitutional avoidance in Jennings v. Rodriguez , --- U.S. ----, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018). There, considering *647 habeas petitions brought by aliens detained pursuant to Section 1225(b) and 1226(c), the Court held that those provisions are not ambiguous, and that, in the absence of ambiguity, courts may not apply the canon of constitutional avoidance "to rewrite a statute." Jennings , 138 S.Ct. at 843. Consequently, the Supreme Court found that neither Section 1225(b) nor 1226(c) could fairly be read to include a six-month limit on detention. Jennings , 138 S.Ct. at 842-51. The Court did not, however, address whether the denial of individualized bond hearings for aliens detained pursuant to Section 1225(b) or Section 1226(c) violates the Due Process Clause of Constitution; instead, it remanded to the Ninth Circuit to allow that court to consider the parties' constitutional arguments "in the first instance." Id. at 851. The Court subsequently vacated the Second Circuit's opinion in Lora and remanded for similar proceedings. Shanahan v. Lora , --- U.S. ----, 138 S.Ct. 1260, 200 L.Ed.2d 415 (2018). On remand, the Second Circuit dismissed Lora as moot, as the removal order in that case had been withdrawn. Lora v. Shanahan , 719 F. App'x 79, 80 (2d Cir. 2018).
Following Jennings , the Court directed the parties to brief the "constitutional questions presented in this action." (Doc. No. 32.) Thereafter, Petitioner filed his supplemental brief on April 6, 2018 (Doc. No. 33); the government responded on April 20, 2018 (Doc. No. 34); and Petitioner's reply was filed on April 27, 2018 (Doc. No. 35). On May 11, 2018, the Court heard further oral argument from the parties. (See Doc. No. 39 ("Tr.").)
II. DISCUSSION
In light of Jennings , which acknowledged that the plain language of immigration statutes do not permit a bond hearing for Petitioner, the central question in this case is whether Petitioner's detention pursuant to 8 U.S.C. § 1225(b)(1) pending the completion of his administrative proceedings violates the Due Process Clause of the Fifth Amendment. Petitioner contends that it does, arguing that, notwithstanding Jennings , the prospect of "indefinite and prolonged detention poses serious constitutional problems" that compel relief in the form of a bond hearing. (Supp. Br. at 9.) For its part, the government asserts that because Petitioner "remains an alien seeking initial entry" for immigration purposes, his constitutional due process rights are defined by the immigration statutes, which do not permit bond hearings for applicants detained during the pendency of their applications for relief from removal. (Supp. Opp'n at 15.) The government argues that, given the unique interests implicated by the government's need to secure the nation's borders, the statutes in question comport with due process. (See Supp. Opp'n at 10.) As it turns out, the Supreme Court's decision in Shaughnessy v. United States ex rel. Mezei , 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (" Mezei "), is directly on point and controls this case.
In Mezei , the Supreme Court considered a habeas petition filed by an immigrant, Ignatz Mezei, who, after residing in the United States for twenty-five years, traveled to eastern Europe for two years.[3] Id. at 208, 73 S.Ct. 625. Nevertheless, when he arrived at Ellis Island and attempted to reenter the United States, he was refused *648 admission "for security reasons." Id. at 208, 73 S.Ct. 625. Because the United States would not allow him to enter - and because no other country would accept him - Mezei remained in detention on Ellis Island. Id. at 208-09, 73 S.Ct. 625. He thereafter brought "a series of habeas corpus proceedings" to challenge his detention and, after twenty-one months, the United States District Court for the Southern District of New York granted his petition and "directed [his] conditional parole on bond." Id. at 209, 73 S.Ct. 625. The Second Circuit affirmed. Id.
The Supreme Court, however, reversed, reasoning that although aliens who have "passed through our gates, even illegally, maybe expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law," an alien "on the threshold of initial entry stands on a different footing," Id. at 212, 73 S.Ct. 625. The Court held that, for an alien "on the threshold of initial entry," due process amounts to "[w]hatever the procedure authorized by Congress is." Id. (quoting United States ex rel. Knauff v. Shaughnessy , 338 U.S. 537, 544, 70 S.Ct. 309, 94 L.Ed. 317 (1950) (" Knauff ") ). The Court therefore concluded that because "harborage at Ellis Island is not entry into the United States," and because the immigration statutes in effect at the time did not require a bond hearing, Mezei's detention did not "depriv[e] him of any ... constitutional right." Id. at 213-15, 73 S.Ct. 625.
Although Petitioner here was paroled into the United States in 2000 and (unlike Mezei) has been continuously present in the United States since that date, the parties agree - indeed, Petitioner's counsel conceded during oral argument - that Petitioner remains "at the threshold of initial entry" for immigration purposes. (Tr. at 11:24-12:1.) Counsel's concession is consistent with the so-called "entry fiction," by which "aliens who have been denied admission to the United States yet are present within its borders are 'treated, for constitutional purposes, as if stopped at the border.' " Traore v. Ahrendt , No. 18-cv-794 (JMF), 2018 WL 2041710, at *1 n.2 (S.D.N.Y. Apr. 30, 2018) (quoting Zadvydas v. Davis , 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) ). The entry fiction applies to aliens - like Petitioner - who are stopped at the border and subsequently paroled into the United States. See Cruz-Miguel v. Holder , 650 F.3d 189, 197 n.12 (2d Cir. 2011) ("Although aliens paroled" into the United States upon arrival "physically enter the United States temporarily, they are nevertheless deemed to remain constructively detained at the border."); see also Leng May Ma v. Barber , 357 U.S. 185, 189-90, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958) ("The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status ....").
Given counsel's admission, Mezei 's holding - that for aliens on the "threshold of initial entry," due process is whatever procedure has been "authorized by Congress" - compels denial of the Petition here. 345 U.S. at 212, 73 S.Ct. 625 (quoting Knauff , 338 U.S. at 544, 70 S.Ct. 309 ). Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), which provides that an alien determined to have "a credible fear of persecution" upon entry to the United States "shall be detained for further consideration of the application for asylum." As the Supreme Court squarely held in Jennings , Section 1225(b)(1) does not include any avenue for release other than parole at the discretion of the Attorney General, which Petitioner requested following his detention in 2017 but did not *649 receive (Tr. 19:20-22). See 138 S.Ct. at 845 ("In sum, [ Section 1225(b)(1) ] mandate[s] detention of aliens throughout the completion of applicable proceedings ...."). Accordingly, because the immigration statutes at issue here do not authorize a bond hearing, Mezei dictates that due process does not require one here.[4]
Recognizing that his claim fails under Mezei , Petitioner advances three arguments to distinguish and neutralize the stark holding of that case. All three fail. First, Petitioner argues that subsequent Supreme Court decisions have limited Mezei. Specifically, he asserts that "[w]hile Mezei established that aliens can be denied entry," the Supreme Court's 2001 opinion in Zadvydas v. Davis , 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), establishes that "aliens still posses[s] liberty interests in freedom from prolonged detention." (Supp. Reply at 4-5.) But Zadvydas addressed the "potentially permanent" confinement, pursuant to 8 U.S.C. § 1231(a)(6), of aliens who had already been admitted to the United States and subsequently ordered removed but whom the government could not, for one reason or another, actually send to another country. 533 U.S. at 691, 695, 121 S.Ct. 2491 ("[T]he issue we address is whether aliens that the [g]overnment finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States."). The Zadvydas Court explicitly considered and distinguished Mezei , reasoning that the "critical" distinction between aliens admitted to the United States and those on the threshold of entry meant that Mezei remained, and still remains, good law. 533 U.S. at 692-95, 121 S.Ct. 2491 ; see also Aracely v. Nielsen , 319 F.Supp.3d 110, 2018 WL 3243977, at *21 (D.D.C. July 3, 2018) ("While Mezei may be under siege, it is still good law."). And since its decision in Zadvydas , the Supreme Court has instructed that the detention of arriving aliens pursuant to Section 1225(b)(1) is not indefinite - it is "for a specified period of time." Jennings , 138 S.Ct. at 844.
Next, Petitioner attempts to distinguish Mezei by arguing that " Mezei 's holding must be read in light of its peculiar circumstances" and that " Mezei 's holding is inapposite because it was decided under a different statutory scheme that is no longer in effect." (Supp. Reply at 5.) But neither the particular facts justifying Petitioner's detention nor subsequent changes in the immigration laws permit this Court to ignore the Supreme Court's categorical holding that, for aliens on the threshold of initial entry, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." Mezei , 345 U.S. at 212, 73 S.Ct. 625 (quoting Knauff , 338 U.S. at 544, 70 S.Ct. 309 ).
Finally, Petitioner argues that Mezei is inapplicable because "Congress cannot shield its laws from judicial scrutiny, especially where constitutional rights are at stake." (Supp. Reply at 5.) But while Petitioner is correct that the power of the political branches "is subject to important constitutional limitations," Zadvydas , 533 U.S. at 695, 121 S.Ct. 2491 ; see also Demore v. Kim , 538 U.S. 510, 523, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), the issue here is not whether Petitioner's constitutional *650 claims are subject to judicial review, but rather the scope of the constitutional protections available to him - and on that question, Mezei is controlling. Accordingly, because the statutory language makes clear that aliens detained pursuant to Section 1225(b)(1)(A) have no statutory entitlement to bond hearings, and because Mezei instructs that, for aliens on the threshold of initial entry, the Constitution extends no farther than statutory language itself, Mezei compels the conclusion that Petitioner's due process rights have not been infringed. Since this Court has no more power to rewrite binding Supreme Court precedent than it does to "rewrite a statute as it pleases," Jennings , 138 S.Ct. at 843, any relief from the clear holding of Mezei must come from Congress or the Supreme Court itself, see, e.g., Johnson v. United States , --- U.S. ----, 135 S.Ct. 2551, 2562-63, 192 L.Ed.2d 569 (2015) (recognizing that the Supreme Court may overturn its prior precedents).
III. CONCLUSION
For the reasons set forth above, IT IS HEREBY ORDERED that the Petition is DENIED. IT IS FURTHER ORDERED that the government's motion to dismiss the Petition (Doc. No. 10) is DENIED as moot.
The Clerk of Court is respectfully directed to terminate the motion pending at docket number 10 and close this case.
SO ORDERED.

The facts set forth below are taken, for the most part, from the Petition (Doc. No. 1 (the "Petition" or "Pet.") ). In ruling on the Petition, the Court has considered the Petition itself the government's memorandum opposition (Doc. No. 27 ("Opp'n") ), Petitioner's supplemental brief in support of the Petition (Doc. No. 33 ("Supp. Br.") ), the government's supplemental brief in opposition (Doc. No. 34 ("Supp. Opp'n") ), Petitioner's supplemental reply brief (Doc. No. 36 ("Supp. Reply") ), and the documents attached thereto.

Although Mezei's background and precise legal status remain unclear, his history as recounted by the district court bears some similarity to Petitioner's: "[Mezei] came to the United States in 1923 and remained here until 1948. The government alleges that he was never lawfully admitted to the United States for permanent residence but ... the government took no action against him in that ... period." United States ex rel. Mezei v. Shaughnessy , 101 F.Supp. 66, 67 (S.D.N.Y. 1951).

Petitioner's status as an alien on the threshold of initial entry distinguishes him from the petitioner in Sajous v. Decker , 18-cv-2447 (AJN). 2018 WL 2357266 (S.D.N.Y. May 23. 2018). There, Judge Nathan held that a lawful permanent resident detained pursuant to 8 U.S.C. § 1226(c), which requires the detention of "certain classes of aliens" who have "entered the United States but [are] believed to be removable." was entitled to a bond hearing after eight months in detention. Id. at *1 n.2.