**Danilo Alexander PINEDA, Petitioner,**

**v.**

**Christopher SHANAHAN, as Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement; Scott Mechkowski, as Assistant Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement; Jeh Johnson, as Secretary, U.S. Department of Homeland Security; and Loretta Lynch, as Attorney General, U.S. Department of Justice, Respondents.**

**16 Civ. 6648 (JCF)**

United States District Court,
S.D. New York.

Signed 07/07/2017

Sarah Telo Gillman, Stacy Taeuber, The Legal Aid Society, New York, NY, Aaron Reichlin–Melnick, The Legal Aid Society, Brooklyn, NY, for Petitioner.

Brandon Matthew Waterman, United States Attorney's Office, New York, NY, for Respondents.

## MEMORANDUM AND ORDER

JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE

The petitioner, Danilo Alexander Pineda, was initially detained as an inadmissible criminal alien by U.S. Immigration and Customs Enforcement in January 2014. In this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, he seeks a second bond hearing under the Second Circuit's decision in Lora v. Shanahan, 804 F.3d 601 (2d Cir. 2015), cert. denied, —— U.S. ——, 136 S.Ct. 2494, 195 L.Ed.2d 824 (2016). Mr. Pineda's petition is denied.[1]

---

1. On March 28, 2017, the parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c).

Background

Mr. Pineda is a citizen of El Salvador who was brought to the United States in 1990, when he was eight years old. (Verified Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Pet."), ¶ 10, 23). Both before and after his arrival in the United States, he and his two sisters were subjected to profound physical and mental abuse and neglect at the hands of his parents and step-parents. (Pet., ¶¶ 24–27). After Mr. Pineda attempted suicide, the New York Administration for Children's Services intervened, placed the children in foster care, and brought charges of abuse and neglect against Mr. Pineda's father and step-mother. (Pet., ¶¶ 27–28). Mr. Pineda lived for a number of years in group homes and, at the age of 18, became homeless. (Pet., ¶ 28).

In August 2001, when Mr. Pineda was approximately 19 years old, he pled guilty to criminal possession of an automobile in the fourth degree, a felony. (eJusticeNY Repository Inquiry ("Criminal History"), attached as Exh. 1 to Declaration of Brandon M. Waterman dated Jan. 12, 2017 ("Waterman Decl.") at 1, 17). Over the next eleven years he pled guilty to a number of misdemeanors and violations, many of which were assertedly related to issues with alcohol and marijuana use brought on by then-undiagnosed Post–Traumatic Stress Disorder ("PTSD"). (Pet., ¶ 29; Criminal History at 3–6, 8, 10–12, 14–15).

In 2006, Mr. Pineda met Glerisse Rodriguez, and in 2008 they had a son. (Pet., ¶ 30). Mr. Pineda and Ms. Rodriguez were married in April 2016. (Pet., ¶ 30). Also in 2006, Mr. Pineda was the victim of an aggravated assault. (Pet., ¶ 38). He cooperated with law enforcement, as certified by the U.S. Attorney's Office for the District of Columbia, and has a pending application for a so-called "U visa."[2] (Pet., ¶ 38).

In late December 2013, Mr. Pineda was arrested, charged with petit larceny and criminal possession of stolen property in the 5th degree, and taken into the custody of the New York City Police Department. (Pet., ¶ 31; Criminal Record at 2). He was released on bond and transferred to the custody of Immigration and Customs Enforcement on January 2, 2014. (Pet., ¶ 31; Respondents' Memorandum of Law in Opposition to the Petition for Writ of Habeas Corpus ("Resp. Memo.") at 3). In an appearance in Immigration Court, Mr. Pineda admitted that he was inadmissible under various provisions of immigration law and conceded he was removable. (Pet., ¶ 32).

In October 2014, Mr. Pineda was arrested and transferred to New Jersey state custody in connection with an assault that occurred in Bergen County Detention Center (he has since pled guilty to simple assault in connection with this charge). (Pet., ¶ 33). He was in the custody of the State of New Jersey from October 17, 2014, until May 5, 2015, when he was returned to Immigration and Customs Enforcement custody. (Pet., ¶ 33).

The Second Circuit issued its decision in Lora on October 28, 2015. In that opinion, the court held that "in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to [8 U.S.C. § 1226(c) ("Section 1226(c)"] must be afforded a bail hearing before an immigration judge within six months of his or her detention." Lora, 804 F.3d at 616. Following the Ninth Circuit in Rodriguez v. Robbins ("Rodriguez II"), 715 F.3d

2. "A U visa is one set aside for victims of certain crimes who have suffered mental or physical abuse and provide assistance to investigations or prosecution of criminal activity." Argueta Anariba v. Shanahan, 190 F.Supp.3d 344, 346 (S.D.N.Y. 2016).

1127, 1131 (9th Cir. 2013),[3] the court also held "that the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." Lora, 804 F.3d at 616.

Mr. Pineda received a hearing pursuant to Lora on November 19 and 23, 2015.[4] (Pet., ¶ 5; Paoli Decl., ¶ 10). The Government argued that Mr. Pineda both was a danger to the community based on his extensive criminal record and was a flight risk. (11/19/15 Tr. at 7–15; Transcript dated Nov. 23, 2015 ("11/23/15 Tr."), attached as Exh. 4 to Waterman Decl., at 14). Mr. Pineda emphasized that he had finally begun treatment for PTSD in 2014 and that he had ties to the community as well as a pending U visa application. (11/19/15 Tr. at 18–19; 11/23/15 Tr. at 8–14, 16). The Immigration Judge found that the Government met its burden of proof as to dangerousness, noting that there was insufficient evidence at that time to overcome Mr. Pineda's criminal history, but that "the more time that transpires the better situation the Court will have to make a better and more informed decision about whether he is going to be a danger or not." (11/23/15 Tr. at 43–44; Order of the Immigration Judge with Respect to Custody dated Nov. 23, 2015, attached as Exh. 5 to Waterman Decl.).

In February an Immigration Judge denied Mr. Pineda's request for a continuance of his removal proceedings to pursue his U visa application and ordered him removed. (Paoli Decl., ¶ 13; Order of the Immigration Judge dated Feb. 11, 2016, attached as Exh. 6 to Waterman Decl.). He appealed that decision. (Paoli Decl., ¶ 13). Meanwhile, in April 2016, Mr. Pineda filed a motion for a second Lora hearing and a hearing was held on May 18, 2016, to address the preliminary question of whether Mr. Pineda's circumstances had changed materially since his previous bond hearing and whether Lora requires a bond hearing every six months. (Paoli Decl., ¶¶ 14–15; Reply at 2; Transcript dated May 18, 2016 ("5/18/16 Tr."), attached as Exh. 7 to Waterman Decl., at 29–31).[5] The Immigration Judge found against Mr. Pineda on both issues. (5/8/16 Tr. at 30–31). Mr. Pineda appealed this order. (Paoli Decl., ¶ 15).

In July 2016, the Board of Immigration Appeals ("BIA") dismissed Mr. Pineda's appeal of the Immigration Judge's order denying his request for a continuance to pursue his U visa, "rendering his removal order administratively final." (Paoli Decl., ¶ 16; Order dated July 13, 2016, attached as Exh. 9 to Waterman Decl.). Shortly thereafter, Mr. Pineda filed a petition for review and a motion seeking a stay of

---

**3.** The Ninth Circuit denominates this opinion Rodriguez II. See Rodriguez v. Robbins ("Rodriguez III"), 804 F.3d 1060, 1064 (2015), cert. granted sub nom. Jennings v. Rodriguez, — U.S. —, 136 S.Ct. 2489, 195 L.Ed.2d 821 (2016). The petitioner sometimes identifies this opinion as Rodriguez I (Pet., ¶¶ 52–53) and sometimes as Rodriguez II (Petitioner's Reply Memorandum of Law in Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Reply") at 4). I will follow the Ninth Circuit's practice here.

**4.** At the time of the hearing, an asylum application was pending, as was a petition for

granting immigrant status under 8 U.S.C. § 1255(i) (also known as Immigration and Nationality Act § 245(i)). (Transcript dated Nov. 19, 2015 ("11/19/15 Tr."), attached as Exh. 3 to Waterman Decl., at 15). The U visa application was filed on November 20, 2015. (Declaration of Geraldo Paoli dated Jan. 12, 2017 ("Paoli Decl."), ¶ 11).

**5.** The Petition asserts that Mr. Pineda requested his second Lora hearing on December 21, 2015, and that the preliminary hearing was held on March 15, 2016 (Pet., ¶ 39), but these dates appear to be mistaken.

removal in the Second Circuit. (Paoli Decl., ¶ 17). Notwithstanding those applications, the BIA dismissed as moot Mr. Pineda's appeal of the order denying as moot his application for a change in custody status in light of the "administratively final order" of removal. (Order dated Aug. 5, 2016, attached as Exh. 10 to Waterman Decl.; Paoli Decl., ¶ 16). He filed this petition seeking review of that decision shortly thereafter.

On March 20, 2017, the Second Circuit granted Mr. Pineda a stay of removal pending that court's decision on his petition for review of the BIA's denial of a continuance in his removal case. (Letter of Brandon M. Waterman dated May 5, 2017 ("Waterman 5/5/17 Letter") at 1; Order dated March 20, 2017, attached as Exh. to Waterman 5/5/17 Letter).

Discussion

■ The Second Circuit's stay of removal mooted a number of arguments presented in the Petition and made clear that Mr. Pineda's detention is governed by Section 1226(c). (Waterman 5/5/17 Letter at 1). The remaining issue is whether Mr. Pineda is entitled to another bond hearing before an immigration judge pursuant either to Lora or, more generally, to constitutional principles of due process. (Pet., ¶¶ 56–58; Resp. Memo. at 16–20; Reply at 3–6).

A. Lora v. Shanahan

In Lora, the Second Circuit interpreted specific statutory language in Section 1226(c), which makes detention (without a bail hearing) mandatory for certain aliens who are deportable because of having committed certain crimes. The court decided two questions:

> (1) whether an alien is subject to mandatory detention only if he or she has been sentenced to and "released" from prison or some form of physical custody; and (2) whether an alien is subject to mandatory detention if there is a gap between the alien's being on post-conviction release and his or her confinement by [the Department of Homeland Security, the agency of which Immigration and Customs Enforcement is a part].

Lora, 804 F.3d at 609 (2d Cir. 2015) (footnote omitted). It answered the first question "no" and the second question "yes," and then went on to address a constitutional question: whether "indefinite detention without . . . a bond hearing [ ] violate[s] [the detainee's] right to due process." Id. at 610, 613. The court noted that all parties agreed that "an implicit time limitation must be read into [the statute]," but differed on whether there should be a bright line rule limiting the time an alien can be detained without a bail hearing or the reasonableness of the length of detention without a bail hearing should be determined on a case-by-case basis. Id. at 613–14. Relying on the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), and following the Ninth Circuit in Rodriguez II, the Second Circuit applied "a bright-line rule to cases of mandatory detention where the government's 'statutory mandatory detention authority under Section 1226(c) . . . [is] limited to a six-month period, subject to a finding of flight risk or dangerousness.'" [6]

6. The Ninth Circuit reasoned in Rodriguez II that, once the period of detention becomes prolonged—that is, once it reaches six months—Section 1226(c) "becomes inapplicable," and authority for detention "rests with [Section] 1226(a)," under which detention pending removal proceedings is discretionary and subject to a bond determination. 715 F.3d at 1138 (quoting Casas–Castrillon v. Department of Homeland Security, 535 F.3d 942, 948 (9th Cir. 2008)); see also Enoh v. Sessions, 236 F.Supp.3d 787, 790–91, 2017 WL

Lora, 804 F.3d at 614 (alterations in original) (quoting Rodriguez II, 715 F.3d at 1133).

Mr. Pineda argues that Lora itself establishes that Section 1226(c) requires periodic detention review hearings:

> In Lora, the Second Circuit held that the Supreme Court's decisions in Zadvydas and [Demore v. Kim, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)] "taken together, suggest the preferred approach for avoiding due process concerns is to establish a presumptively reasonable six-month period of detention." 804 F.3d at 615 (emphasis added). By using the phrase "period of detention," the Second Circuit emphasized that detention reviews must be periodic.[7]

(Pet., ¶ 49). This overreads the quoted language. The statement is made in the context of the court's decision about whether to impose a bright-line demarcation of reasonable detention as opposed to endorsing a case-by-case analysis. Lora, 804 F.3d at 614–16. There is no indication that the Second Circuit had considered the issue raised here—whether continued detention after an initial six months requires periodic review hearings.[8] On the contrary, there is language in the decision that indicates that the court was concerned only about the initial six months of detention. For example, the court agreed that Mr. Lora's "indefinite detention without being afforded a bond hearing would violate his right to due process." Id. at 613 (emphasis added). Perhaps more to the point, the Second Circuit concludes, "[W]e hold that, in order to avoid the constitutional concern raised by indefinite detention, an immigrant detained pursuant to [S]ection 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." Id. at 616 (emphasis added).

The petitioner suggests that the Second Circuit's reliance on Rodriguez II supports its position. The argument proceeds like this: the Second Circuit adopted the Ninth Circuit's reasoning in Rodriguez II when it imposed a presumptive six-month limitation on detention under Section 1226(c); after Lora was issued, the Ninth Circuit decided Rodriguez III, which held, in relevant part, that "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as the 'period of ... confinement grows,'" Rodriguez III, 804 F.3d at 1089 (alteration in original) (quoting Diouf v. Napolitano, 634 F.3d 1081, 1091 (9th Cir. 2011)); therefore, Lora must also stand for the proposition that periodic review hearings are required. (Pet., ¶¶ 53–54). A glance at Rodriguez III is enough to undermine Mr. Pineda's stance, because in that case, the court admitted that it "[had] not had occasion to address this issue [of periodic detention review hearings] in [ ] previous decisions, and it has been a source of some contention in the district courts." 804 F.3d at

---

1041597, at *3 n.4 (W.D.N.Y. 2017), appeal docketed No. 17–1236 (2d Cir. April 26, 2017). The Second Circuit did not explicitly adopt this view.

7. As I understand the petitioner's position, he contends that the review must be in the form of a hearing before an Immigration Judge. The "periodic custody reviews" that the respondent asserts Mr. Pineda has received pursuant to 8 C.F.R. § 241.4(k) by the "district director or Director of the Detention and Removal Field Office" (Resp. Memo. at 19) are not sufficient. Under Lora periodic agency review is not equivalent to a hearing. 804 F.3d at 606 ("[M]andatory detention for longer than six months without a bond hearing affronts due process.").

8. Indeed, I have reviewed the briefs filed in Lora, including the briefs of amici curiae, and none addresses this question head-on.

1089. Thus, the notion that Rodriguez II (or Lora) mandates such periodic review is not supportable.

### B. Due Process

The fact that Lora does not mandate periodic detention review hearings does not, however, end the inquiry. As should be clear, the Lora Court simply did not address the issue. But principles of constitutional due process might require such review—indeed, that seems to be what the Ninth Circuit held in Rodriguez III, 804 F.3d at 1089–90 ("This decision flows from the Supreme Court's and our own precedent bearing on the constitutional implications of our government's prolonged civil detention of individuals ...."). Unfortunately, Rodriguez III is of little aid, because it is short on reasoning, appearing to begin and end its analysis of this question with a quotation from Zadvydas.[9] 814 F.3d 1089 (quoting Zadvydas, 533 U.S. at 701, 121 S.Ct. 2491, via Diouf, 634 F.3d at 1091).

Zadvydas involved aliens unlawfully present in the United States for whom a final order of removal had been entered. 533 U.S. at 682, 121 S.Ct. 2491. The government then had 90 days to remove the detained individuals, but a statute—not the one at issue here—authorized continued detention if removal was not accomplished within that period of time. Id. The Supreme Court described the question to be answered as "whether this post-removal statute authorizes [the government] to detain a removable alien indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal." Id. In one of the two cases that the Court reviewed, the Fifth Circuit concluded that Mr. Zadvydas' "detention did not violate the Constitution because eventual deportation was not 'impossible,' good-faith efforts to remove him from the United States continued, and his detention was subject to periodic administrative review." Id. at 685, 121 S.Ct. 2491 (citing Zadvydas v. Underdown, 185 F.3d 279, 294, 297 (5th Cir. 1999)).

The Court recognized that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" and "conclude[d] that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." Id. at 690, 699, 121 S.Ct. 2491. The Court therefore crafted the following remedy:

> After [a] 6–month period [of detention], once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.

9. As noted, the Supreme Court granted the federal government's petition for writ of certiorari in Rodriguez III. After oral argument, the Court directed the parties to file supplemental briefs that addressed "whether the length of the [ ] detention must be weighed in favor of release, and whether new bond hearings must be afforded automatically every six months," as well as the underlying question decided by Lora, that is, whether a detainee under 1226(c) is entitled to a hearing when he has been held for six months, and, if so, whether the Government must prove by clear and convincing evidence that the detainee is a flight risk or danger to the community. Order, Jennings v. Rodriguez, —— U.S. ——, 137 S.Ct. 471, 196 L.Ed.2d 490 (2016). On June 26, 2017, the Court ordered reargument. Kevin Johnson, "No decision in two immigration-enforcement cases," SCOTUSblog, http://www.scotusblog.com/2017/06/no-decision-two-immigration-enforcement-cases/ (last visited June 27, 2017).

This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701, 121 S.Ct. 2491. The decision in Mr. Zadvydas' case (as well as the decision in the companion case) was vacated and remanded. Id. at 702, 121 S.Ct. 2491.

Mr. Pineda contends that Zadvydas created procedural safeguards in which "any detainee held post-removal for six months is entitled to ongoing reevaluations of the reasons for detention." (Pet., ¶ 50). Zadvydas certainly indicates that periodic review hearings must be available to a detainee. Zadvydas, 533 U.S. at 701, 121 S.Ct. 2491. What does not follow, however, is the petitioner's contention that the burden remains on the Government to establish the need for continued detention even after an initial bond determination hearing. (Reply at 6). As discussed above, Zadvydas itself places an initial burden on the detainee to establish "that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701, 121 S.Ct. 2491. This undermines Mr. Pineda's argument that Zadvydas mandates that the Government, as a matter of course, must reevaluate a detainee's entitlement to bond every six months with no showing required from the detainee.

 Indeed, those held under Section 1226(a), which governs discretionary detention of aliens and embodies the Immigration and Naturalization Act's "broad requirement of a bond hearing for immigration detention," Harding v. Decker, No. 15 Civ. 3708, 2015 WL 3630664, at *1 (S.D.N.Y. June 5, 2015), appeal docketed, No. 15–2497 (2d Cir. Aug. 7, 2015); see also Rodriguez II, 715 F.3d at 1135 ("[U]nder § 1226(a)'s discretionary detention regime, a bond hearing is required before the government may detain an alien for a 'prolonged' period." (citing Casas–Castrillon, 535 F.3d at 951)); Figueroa v. Aviles, No. 14 Civ. 9360, 2015 WL 464168, at *3 (S.D.N.Y. Jan. 29, 2015) (noting that Section 1226(a) requires bond hearing), must, pursuant to regulation, show changed circumstances in order to establish the right to a bond redetermination hearing, see 8 C.F.R. § 1003.19(e). The respondents further represent, without dispute from the petitioner, that the bond redetermination procedures of that regulation are available to those initially held pursuant to Section 1226(c). (Resp. Memo. at 16). And, in light of Zadvydas' approval of a regime that places an initial burden on the detainee to show entitlement to release, I cannot agree with Mr. Pineda's argument that "the fact that a detainee can seek a new bond hearing based on changed circumstances does not lessen the constitutional implications of detention once it reaches six months." (Reply at 6). Rather, the availability of a bond redetermination hearing upon a showing of changed circumstances satisfies due process.[10]

---

10. To be sure, were there no procedures enabling a detainee held under Section 1226(c) to receive a bond redetermination hearing, the petitioner would have a stronger argument pursuant to Zadvydas, which I read to require re-evaluation of the detention of a removable alien where "there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701, 121 S.Ct. 2491. Mr. Pineda has not made such a showing (which I assume would constitute materially changed circumstances under 8 C.F.R. § 1003.19). See, e.g., Guangzu Zheng v. Decker, 618 Fed.Appx. 26, 28 (2d Cir. 2015) ("[T]he Government has shown a 'significant likelihood of removal in the reasonably foreseeable future.' Once this Court decides Zheng's pending petition for review, the Gov-

379

Conclusion

█ For the foregoing reasons, Mr. Pineda's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is denied.[11] The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

ernment will either remove or release Zheng." (internal citation omitted) (quoting Zadvydas, 533 U.S. at 701, 121 S.Ct. 2491)); (Resp. Memo. at 18 (noting that "[t]here are currently no institutional barriers to Pineda's removal to El Salvador, and the government has been able to execute a significant number of removals to El Salvador.")). And, of course, where such a showing is made, the government then would have the burden to show by clear and convincing evidence that the petitioner should not be released because of flight risk or dangerousness. Lora, 804 F.3d at 614.

11. To the extent that the petitioner intended to challenge the constitutionality of the October 17, 2016 decision by the Acting Field Office Director from Immigration and Customs Enforcement to continue detention (Reply at 8–9), he has waived that argument by raising it for the first time in his reply brief. See, e.g., In re Weatherford International Securities Litigation, No. 11 Civ. 1646, 2013 WL 12185082, at *2 n.2 (S.D.N.Y. Nov. 19, 2013) (issues raised initially in reply papers deemed waived).