Luis Javier **MENDOZA–ORDONEZ,** Petitioner

v.

Craig A. **LOWE, et al., Respondents**

CASE NO. 1:16–CV–1777

United States District Court, M.D. Pennsylvania.

Filed 07/26/2017

Joseph A. Brophy, Brophy & Lenahan P.C., Newtown Square, PA, for Petitioner.

Brian C. Ward, U.S. Department of Justice, Gisela A. Westwater, Sairah G. Saeed, Distri Court Section, Office of Immigration Litigation US Department of Justice, Washington, DC, Kate Mershimer, U.S. Attorney's Office, Harrisburg, PA, for Respondents.

## MEMORANDUM

William W. Caldwell, United States District Judge

### I. Introduction

Petitioner Luis Javier Mendoza–Ordonez ("Petitioner" or "Mendoza") is a native and citizen of Honduras, and has been in the custody of U.S. Immigration and Customs Enforcement (ICE) for almost two years, since July 28, 2015. (Doc. 1 ¶¶ 6, 12, 22). Mendoza is currently incarcerated at Pike County Correctional Facility in Hawley, Pennsylvania, and is detained by ICE pending his ongoing withholding-of-removal proceedings under the Immigration and Nationality Act (INA) and apparently also the Convention Against Torture (CAT). (Id. ¶ 6). The United States Court of Appeals for the Third Circuit has granted a stay of removal as it considers Mendoza's petition for review of the Board of Immigration Appeals' (BIA) decision denying his application for withholding of removal. (Id. ¶¶ 37–38); (Doc. 1–14 at 2). Respondents are various Government and prison officials ("Respondents" or "Government"). (Id. ¶ 7–11).

On August 26, 2016, Mendoza filed the instant counseled Petition (Doc. 1) for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, alleging: (1) that his continued detention without a bond hearing is not authorized by INA § 236, 8 U.S.C. § 1226 ("§ 1226"), which governs an alien's detention while removal proceedings are

ongoing; and (2) that even if INA § 241, 8 U.S.C. § 1231 ("§ 1231"), governs his detention, such a prolonged detention without a bond hearing violates due process guarantees of the Fifth Amendment. (Doc. 1 at 14–21).

The petition was reviewed by Magistrate Judge Karoline Mehalchick, who, on May 24, 2017, issued a thorough Report and Recommendation ("Report"). (Doc. 22). In her Report, Judge Mehalchick, relying on this court's recent decision in Rafael Ignacio v. Sabol, No. 1:15-CV-2423, 2016 WL 4988056 (M.D. Pa. Sept. 19, 2016) (Caldwell, J.), appeal docketed sub. nom.,[1] Guerrero–Sanchez v. Sabol, No. 16–4134 (3rd Cir. Nov. 17, 2016), found that Mendoza's continued detention was pursuant to § 1226 and therefore recommended that the petition be granted and that we enter an order referring this matter to an Immigration Judge (IJ) to conduct an initial individualized bond hearing at which the Government will bear the burden of proving that Mendoza's continued detention is necessary to secure his removal. (Id. at 16).

Before this court are both parties' objections (Docs. 23 & 25) to Judge Mehalchick's Report. We have reviewed Judge Mehalchick's thorough and well-reasoned Report, Mendoza's Petition, its supporting documentation, and the parties' objections. As we did in Ignacio, we have again carefully considered the applicable statutes at issue, and we will sustain Mendoza's objections to the Report and will overrule the Government's objections. We will adopt Judge Mehalchick's Report, as modified by this opinion.

## II. Background

We review the facts from Mendoza's petition and the underlying withholding-of-removal proceedings. Mendoza was born in 1989 in Choluteca, Honduras, and has six siblings living in Honduras: four live in its capital, Tegucigalpa, and two live in Apacilagua. (Doc. 1 ¶ 12; Doc 1–2 at 4). Mendoza's mother lives in the United States and is pursuing an affirmative asylum claim. (Doc. 1–2 at 4; Doc. 1–7 at 3). Mendoza's father was a political activist for Honduras's Liberal Party, one of the country's two chief political parties, and was married to another woman. (Doc. 1–2 at 4). As a child, Mendoza saw his father weekly, and would attend Liberal Party meetings or accompany his father while his father did political work. (Id. at 4, 7). In 1997, Mendoza's father lost an Apacilagua mayoral race to Armenja Aguilar, but was later elected as a councilman. (Id. at 4–5) As a result of his attempts to challenge the fairness of the election and demand financial transparency within the municipality, Mendoza's father made political enemies in the mayor's office and in Honduras's National Party, the country's other chief political party. (Id. at 5, 7).

In the early morning of January 1, 2000, when Mendoza was eleven years old, three National Party activists shot and killed Mendoza's father for his political activities and his opposition to the National Party; Mendoza was at his aunt's house when the assassination occurred. (Id.). One of the activists who carried out the murder was Geraldo Valladares ("Valladares"), who was later convicted of the attack but served only a six-month prison sentence. (Id.) Approximately two years later, on August 24, 2002, Mendoza's uncle, who also appears to have been politically active in

---

1. The petitioner's name in this case is Rafael Ignacio Guerrero Sanchez. See Guerrero Sanchez v. Sabol, No. 1:15-CV-2423, 2016 WL 7426129, at *1 n.1 (M.D. Pa. Dec. 23, 2016). For consistency with Judge Mehalchick's Report, we will herein reference this decision as "Ignacio."

the Liberal Party, was stabbed and killed by a different National Party activist, Dimas Amardor. (Id. at 5). Amardor was convicted of the murder, but also served a short prison sentence. (Id.)

Like his father and uncle, Mendoza was active in the Liberal Party. (Id. at 5, 7). In 2007, after he turned eighteen years old, Mendoza became president of a local youth division of the Party, actively participated in meetings, assisted in recruitment, and gave political speeches in villages for the Party. (Id.) Mendoza gave these speeches up until 2014, when the National Party won the local and national elections. (Id. at 5).

In 2014, Mendoza received two death threats as a result of his political activity. (Id.) On September 7, 2014, Valladares sent a message through an intermediary that if Mendoza "continued to speak publically against the National Party, he would suffer the same fate as his father." (Id.) The intermediary delivered the threat verbally, but did not harm Mendoza. (Id.) The next day, Mendoza filed a complaint with a local judge, Miriam Umanzor Aguilar, who is a National Party member and the niece of his father's 1997 mayoral opponent. (Id.) The judge said she would act on the complaint and call Mendoza if needed. (Id.) There is no indication that action was taken on the complaint.[2]

After reporting the threat, Mendoza traveled to Tegucigalpa to stay with his sister. (Id. at 6). Mendoza pursued a visa to the United States, but his application was denied on October 21, 2014, after which he traveled to the United States illegally to seek refuge. (Id.) In November 2014, Mendoza unlawfully entered the United States via raft across the Rio Grande River without inspection or parole and without immigration documents. (Id. at 2, 6). On November 28, 2014, Mendoza was apprehended at the border by Customs and Border Protection ("CBP") agents near Hidalgo, Texas. (Id. at 6; Doc. 1–8). Following an interview with CBP agents, Mendoza was determined ineligible for admission pursuant to INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I); and, on November 29, 2014, was ordered removed by a Notice and Order of Expedited Removal issued pursuant to INA § 235(b)(1), 8 U.S.C. § 1225(b)(1). (Docs. 1–2 at 6, 1–3, 1–4, & 1–8). Mendoza was removed to Honduras four days later. (Doc. 1–2 at 6; Doc. 1–4).

When Mendoza returned to Honduras, he lived in Tegucigalpa with his sister because he felt he could not return to Apacilagua due to its political problems. (Doc. 1–2 at 6). Mendoza hid in his sister's home for four months because the National Party controlled the country, but, on April 17, 2015, he visited his grandfather in Apacilagua. (Id.) On his return to Tegucigalpa the following day, Mendoza stopped at a soccer field with friends. (Id.) Approximately twenty minutes after stopping, Mendoza was confronted by Valladares and other members of the National Party. (Id.) Valladares put a gun to Mendoza's head and threatened to kill Mendoza if he continued to talk against the National Party. (Id.) Mendoza's childhood friend, as well as his father's widow, witnessed and verified this death threat. (Id. at 7–8). On April 20, 2015, Mendoza again filed a complaint with the same local judge, who apparently again did not act on the complaint. (Id. at 6). As such, Valladares was not arrested for either aforementioned threat. (Id.) Mendoza did not file a complaint with a different judge. (Id.)

---

**2.** Despite noting that Mendoza received two death threats in 2014, the IJ's decision recounts only this one threat for that year. It is unclear if there was another threat in 2014, or if the IJ was including the later death threat received in 2015 into this factual recitation.

On April 22, 2015, Mendoza returned to Tegucigalpa and hid at his sister's house for several days, apparently without venturing out in public. (Id.) On May 5, 2015, Mendoza left Honduras for the United States, but was apprehended in Mexico on May 15, 2015, and deported back to Honduras on May 20, 2015. (Id.) Mendoza again lived with his sister without leaving the house. (Id.) Then, in July 2015, Mendoza again illegally entered the United States near Hidalgo, Texas, without inspection or parole, and, on July 28, 2015, he was apprehended by CBP. (Id. at 3; Doc. 1–4). On July 28, 2015, pursuant to 8 C.F.R. § 241.8, and INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), the Department of Homeland Security ("DHS") issued a "Notice of Intent/Decision to Reinstate" Mendoza's prior expedited order of removal. (Doc. 1–4). Before the reinstated removal order was carried out, Mendoza expressed a fear of harm or persecution if returned to Honduras, and, pursuant to 8 C.F.R. §§ 208.31, 241.8, and 1208.31, was referred to an asylum officer for a credible fear determination. (Doc. 22 at 2).

On August 13, 2015,[3] Mendoza was advised that he was being detained in ICE custody without bond. (Doc. 1–5). On September 1, 2015, a credible fear interview was conducted by an asylum officer from the Newark Asylum Office. (Doc. 1 ¶ 26). On September 14, 2015, the asylum officer concluded that Mendoza had a reasonable fear of persecution on account of his political affiliation if returned to Honduras, and therefore, pursuant to 8 C.F.R. § 208.31(e), referred Mendoza to the Immigration Court "for full consideration of the request for withholding of removal only." (Id.; see also Doc. 1–6)

On September 28, 2015, Mendoza, through his attorney, sent a letter to prison officials and the Newark Asylum Office requesting that Mendoza be released on his own recognizance or, alternatively, released on bond. (Doc. 1–7 at 4). In that letter, counsel detailed factors supporting his request. (Id. at 3–4). Counsel recounted, and provided proof of, Mendoza's family ties to the United States, consisting of his mother, who is currently pursuing an affirmative asylum claim, as well as his aunt, who is a United States citizen, and his uncle, who is a legal permanent resident. (Id.) Counsel provided an affirmation by Mendoza's aunt and uncle in which they "agreed to provide [Mendoza] with a home and financial support for the duration of their nephew's adjudication process." (Id.) Counsel also provided proof that Mendoza does not have a criminal record either in Honduras or the United States. (Id.)

On October 14, 2015, ICE issued a "Decision to Continue Detention," which informed Mendoza that he would continue to be detained without bond pending review by an IJ. (Doc. 1–8). On October 27, 2015, Mendoza appeared for a hearing before an IJ, who determined that he was ineligible for bond because "this is a withholding only case[.]" (Doc. 1–9 at 5). On February 8, 2016, ICE again informed Mendoza that his detention would continue, but acknowledged that "ICE is unable to move forward with [Mendoza's] removal" due to the pending withholding-of-removal proceedings. (Doc. 1–10).

On February 11, 2015, a hearing was held before an IJ at which Mendoza and others testified to the above-mentioned facts. (Doc 1 ¶ 31). On March 1, 2016, the IJ issued a written decision denying Mendoza's application for withholding of removal. (Doc. 1–2 at 15). The IJ first noted that Mendoza's application was not for asylum, but withholding of removal only.[4]

---

3. This form appears to be incorrectly dated August 13, 2014.

4. Because Mendoza is subject to a reinstated order of removal, any application for asylum

(Id. at 9). Next, although the IJ found Mendoza's fear of persecution credible, she nonetheless concluded that Mendoza had not established that the Honduran government was unable or unwilling to protect him or control the source of his past persecution. (Id. at 12). The IJ noted that the persons who murdered Mendoza's father and uncle in 2000 and 2002 were convicted and sentenced for their acts, even if for a short period of time. (Id.) Given this evidence, the IJ "hesitate[d]" to make the "assumption" that Honduran courts were unwilling to act on the 2014 and 2015 death threats Mendoza received, despite acknowledging those courts' "inactivity" on Mendoza's complaints regarding the death threats. (Id.) The IJ added that Mendoza could relocate to Tegucigalpa with his sister. (Id.) As to his CAT claim, the IJ noted that Mendoza had not shown that the Honduran government was willfully blind to any potentially torturous conduct. (Id. at 14).

On March 29, 2016, Mendoza appealed to the BIA, asserting that the IJ's conclusions—specifically that Valladares's conviction in 2000 was indicative of Honduras's current state of affairs—ignored substantial evidence that he had presented of the country's current conditions, particularly given that Honduran courts did nothing about the death threats Mendoza received in 2014 and 2015. (Doc. 1 ¶ 33; Doc 1–11 at 3–4).

While awaiting the BIA's decision, Mendoza's counsel requested his release from custody during his appeal, noting that Mendoza had been in a correctional facility for nearly one year at that point and reiterating Mendoza's family ties to the United States and lack of criminal record. (Doc.

1–12). Counsel indicated that he "would prefer not to undertake the time and expense of filing a petition for habeas corpus in federal court," and asked that ICE be amenable to release during the exhaustion of Mendoza's appeals. (Id.)

On July 11, 2016, the BIA dismissed Mendoza's appeal and affirmed the IJ's decision to deny withholding of removal. (Doc. 1–11 at 3). The BIA concluded that Mendoza failed to show "that the length of time that his alleged persecutor was imprisoned and the passage of time since imprisonment establishes that the government of Honduras is unable or unwilling to protect him." (Id. at 4). The BIA also found that Mendoza did not establish that the IJ's failure to consider Honduras's changed country conditions since his father's murder was "sufficient to impact the outcome of the case." (Id.)

On August, 9, 2016, Mendoza filed a petition for review of the BIA's decision in the United States Court of Appeals for the Third Circuit. (Doc 1–13). On August 10, 2016, pursuant to a standing order, the Third Circuit granted a temporary stay of removal as it considered Mendoza's motion for a stay of removal and his appeal from the BIA's decision. (Doc. 1–4; Doc. 1 ¶ 38). That same day, ICE denied Mendoza's counsel's previous request for release during the pendency of his appeals. (Doc. 1–15; Doc. 1 ¶ 39). On August 25, 2016, the Third Circuit, based in part on its review of the likelihood of success of Mendoza's petition, granted Mendoza's motion for a stay of removal. (Doc 28–2 at 2). The Third Circuit therefore vacated its prior temporary stay and ordered a stay of removal. (Id.) The Third Circuit recently heard oral

---

appears foreclosed by the Third Circuit's recent decision in Cazun v. U.S. Att'y Gen., 856 F.3d 249, 251 (3d Cir. 2017) ("Because we find that Congress has not spoken clearly on the issue in the relevant statute, we will give

Chevron deference to the agency's reasonable statutory interpretation that aliens subject to reinstated removal orders are ineligible to apply for asylum.").

argument on Mendoza's petition for review, see Mendoza–Ordonez v. U.S. Att'y Gen., 16–3333 (3d Cir. May 9, 2017), but has not yet rendered a decision on his petition for review.

On August 26, 2016, Mendoza filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2241, arguing that his continued detention in a correctional facility without the opportunity for a bond hearing violates 8 U.S.C. § 1226 as well as his procedural due process rights. (Doc. 1). On May 24, 2017, after being fully briefed and hearing argument on the petition, (see Docs. 19–21), Magistrate Judge Mehalchick issued her Report, in which she recommended that we grant Mendoza's petition and order a bond hearing to be held by an IJ. (Doc. 22 at 16–17). Judge Mehalchick found this court's decision in Ignacio was "nearly indistinguishable with the case at hand," that Mendoza's continued detention is pursuant to § 1226 despite reinstatement of his prior order of removal, and that Mendoza was therefore entitled to an individualized bond hearing, which should be conducted in the first instance by an IJ. (Id. at 10 (citing Ignacio, 2016 WL 4988056, at *4–5)).

Both parties have filed objections to Judge Mehalchick's Report. (Docs. 23 & 25). In its objections, the Government contends: (1) that this court should find Mendoza's detention falls under § 1231 and not § 1226; and (2) that even if Mendoza is not detained under § 1231, he should be subject to detention under 8 U.S.C. § 1225 ("§ 1225") without a bond hearing. (Doc. 24 at 2–20). In Mendoza's objections, he argues that if a bond hearing is held in this matter: (1) it should be held within twenty-one days instead of thirty days; and (2) the Government should be required at such a hearing to prove by clear and convincing evidence that Mendoza's continued detention is necessary to fulfill the purposes of the detention statute. (Doc. 26 at 1–3).

*III. Discussion*

Where objections to a report and recommendation are filed, we "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). We "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. The written objections must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." M.D. Pa. L. R. 72.3.

As Judge Mehalchick noted in her Report, the issue before this court is one which we have previously addressed: whether a detained alien who is subject to a reinstated removal order, but whose removal has been stayed by the court of appeals due to ongoing withholding-of-removal proceedings, is considered detained by ICE under § 1226 or § 1231. See Ignacio, 2016 WL 4988056, at *2–5. Federal courts throughout the country, and even in this district, are divided on whether an alien who is subject to a reinstated removal order but who is going through withholding-of-removal proceedings is considered detained under § 1226 or § 1231; the issue has recently resulted in a circuit split. See Bucio–Fernandez v. Sabol, No. 1:17-CV-00195, 2017 WL 2619138, at *3 (M.D. Pa. June 16, 2017) (disagreeing with this court's decision in Ignacio, and noting that "there appears to exist well-reasoned decisions on either side of the issue now presently before the Court"); see also Padilla–Ramirez v. Bible, 862 F.3d 881, 890 (9th Cir. 2017) (disagreeing with Second Circuit's decision in Guerra v. Shanahan, 831 F.3d 59 (2d Cir. 2016), and noting that

"[i]f uniformity is required, we are content to leave it to the Supreme Court to harmonize the resulting split of authority").

In Ignacio, this court, agreeing with the Second Circuit's decision in Guerra, concluded that § 1226 was "the more logical source of authorization for the detention of aliens currently in withholding-only proceedings." Ignacio, 2016 WL 4988056, at *4. Relying on our decision, Judge Mehalchick found that Mendoza's continued detention was under § 1226 and that he was therefore entitled to a bond hearing. (Doc. 22 at 14–16).

The Government objects to Judge Mehalchick's reliance on our Ignacio decision. In its objection, the Government argues that this court should reverse course from Ignacio and find Mendoza detained under § 1231 for two reasons: (1) because Ignacio "did not correctly apply the statutes at issue" and "did not fully examine the text of the [INA] and the statutory scheme regarding removal and detention as a whole"; and (2) because relevant immigration regulations "make clear that § 1231 applies here." (Doc. 24 at 2, 12). Moreover, the Government argues that Mendoza should be considered detained without a bond hearing under 8 U.S.C. § 1225(b)(1). (Doc. 24 at 16).

We reject the Government's contentions that detention should fall under § 1231, as those arguments merely disagree with this court's recent opinion in Ignacio. Contrary to the Government's suggestion, this court, in deciding Ignacio, thoroughly examined the statutes and regulations at issue. We have again done so here, and we agree with Judge Mehalchick that the instant case is virtually indistinguishable from Ignacio. We will not reverse course from our Ignacio decision, which is being litigated in the Third Circuit. Accordingly, we find that because Mendoza is in ongoing withholding-of-removal proceedings, and because the Third Circuit has stayed his removal, his detention is subject to § 1226. See Ignacio, 2016 WL 4988056, at *5 (citing Jamai v. Saldana, 648 Fed.Appx. 225, 226 (Mem), 2016 WL 1697654, at *1 (3d Cir. 2016)).

However, we recognize that the Government's argument concerning detention under 8 U.S.C. § 1225(b)(1) was not argued to this court in Ignacio, despite it appearing that, like Mendoza, the petitioner in Ignacio was initially removed pursuant to an expedited order of removal under § 1225(b)(1). See Guerrero Sanchez v. Sabol, No. 1:15-CV-2423, 2016 WL 7426129, at *1 (M.D. Pa. Dec. 23, 2016). As such, we will address whether Mendoza's detention falls under § 1225(b)(1).

8 U.S.C. § 1225(b)(1) governs the inspection of aliens seeking admission into the United States, and, in general, provides that where an immigration officer determines that an arriving alien is inadmissible on the basis of a lack of documentation under § 1182(a)(7), the officer may summarily order the alien removed "without further hearing or review." See 8 U.S.C. § 1225(b)(1)(A)(i). However, if "the alien indicates ... a fear of persecution, the officer shall refer the alien for an interview by an asylum officer...." Id. § 1225(b)(1)(A)(ii). "If the officer determines at the time of the interview that an alien has a credible fear of persecution ..., the alien shall be detained for further consideration of the application for asylum." Id. § 1225(b)(1)(B)(ii).

Here, there is no dispute that Mendoza was initially determined inadmissible for admission into the United States pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) for lack of any valid entry documents. It does not appear that Mendoza claimed any fear of persecution at that time, and on November 29, 2014, he was ordered removed via an expedited order of removal pursuant to 8 U.S.C. § 1225(b)(1). (See Docs. 1–2 at 6, 1–

3, 1–4, & 1–8). When this initial removal order was executed, Mendoza's life had only been verbally threatened; his father's killer had not yet pointed a gun to his head. Accordingly, after his expedited removal order was issued pursuant to § 1225(b)(1), Mendoza was only detained for a few days and then deported back to Honduras.

After having a gun pointed to his head and his life threatened by his father's killer in April 2015, Mendoza again illegally entered the United States in July 2015 and was apprehended at the border. At that point, Mendoza's prior expedited order of removal was reinstated pursuant to 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8. (Doc. 1–4).

8 U.S.C. § 1231(a)(5), entitled "Reinstatement of removal orders against aliens illegally reentering," provides that "[i]f . . . an alien has reentered the United States illegally after having been removed . . . the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."

Likewise, 8 C.F.R. § 241.8 provides that "[a]n alien who illegally reenters the United States after having been removed . . . shall be removed from the United States by reinstating the prior order," and "has no right to a hearing before an immigration judge" subsequent to reinstatement. 8 C.F.R. § 241.8(a); 8 C.F.R. § 1241.8(a). However, these regulations also provide an "Exception for withholding of removal," which provides that "[i]f an alien whose prior order of removal has been reinstated under this section expresses a fear of returning to the country designated in that order, the alien shall be immediately referred to an asylum officer for an interview to determine whether the alien has a rea-sonable fear of persecution or torture pursuant to § 208.31 of this chapter." 8 C.F.R. § 241.8(a), (e); 8 C.F.R. § 1241.8(a), (e).

Here, the Government argues that because Mendoza's original removal order was pursuant to § 1225, he should be considered detained by ICE under that statute, which does not appear to allow for release on bond. (Doc. 24 at 16–20). We note that this argument is inconsistent with the Government's primary assertion that "§ 1231 governs detention in the reinstatement context" and that Mendoza should be considered detained under § 1231 because his prior expedited order of removal was reinstated under § 1231(a)(5). (See id. at 5). Despite this contradiction, the Government maintains that Mendoza should nonetheless be considered detained under § 1225(b)(1) as an alien who was "stopped at the border." (See id. at 17–18).

The Government's argument on this point—that "[i]f [Mendoza's] earlier removal order had not been reinstated, he would have again been processed for removal under § 1225," (see id. at 17 (emphasis added))—ignores the fact that Mendoza's prior order of removal was reinstated under § 1231(a)(5). Therefore, although Mendoza was initially subject to expedited removal under § 1225(b)(1) when he was first removed, his removal order when he reentered the United States was reinstated under § 1231(a)(5). In any event, the Government's argument for detention under § 1225(b)(1) also ignores that, after reinstatement of Mendoza's prior removal order under § 1231(a)(5), Mendoza expressed a fear of harm or persecution if returned to Honduras and was referred to an asylum officer for a credible fear determination pursuant to 8 C.F.R. §§ 208.31, 241.8, and 1208.31. (Doc. 22 at 2). These subsequent events changed the landscape of the statutory

and regulatory scheme at issue, especially once the asylum officer determined that Mendoza's fear of persecution was credible and referred him for withholding-of-removal proceedings in accord with 8 C.F.R. § 1208.31(e).

As already noted, both 8 C.F.R. §§ 241.8 and 1241.8, although generally stating that an alien subject to a reinstated order of removal has no right to a hearing before an IJ, allow for an express exception for withholding of removal. See id. § 241.8(a), (e) and § 1241.8(a), (e). Similarly, 8 C.F.R. § 1208.31 governs an alien subject to removal orders "reinstated under [8 U.S.C.§ 1231(a)(5) ] who, in the course of the administrative removal or reinstatement process, expresses a fear of returning to the country of removal." 8 C.F.R. § 1208.31(a). Pursuant to § 1208.31(e), after an asylum officer determines that an alien demonstrates a reasonable fear of persecution, he is referred to an IJ "for full consideration of the request for withholding of removal," who shall conduct proceedings in accordance with 8 C.F.R. § 1208.16, and any appeal from the IJ's determination shall lie with the BIA. Id. §§ 1208.31(e), 208.31(e); see also 8 C.F.R. §§ 1241.8, 241.8.[5]

■ Here, the processes set forth in these regulations appear to be exactly those that were followed in the instant case. Following reinstatement of his § 1225 expedited removal order under § 1231(a)(5) and 8 C.F.R. §§ 241.8 and 1241.8, Mendoza was subsequently re-

ferred to an asylum officer, who made a positive credible fear determination and referred Mendoza to an IJ for withholding of removal under 8 C.F.R. § 1208.31. Contrary to the Government's argument, these events and the applicable regulations take Mendoza's detention outside of § 1225(b)(1). As the Third Circuit has intimated, detention under § 1225(b)(1) is not indefinite because when the interviewing asylum officer "concludes that the alien possesses a credible fear of persecution or torture, the alien is referred for non-expedited removal proceedings under 8 U.S.C. § 1229a, 'during which time the alien may file an application for asylum and withholding of removal.'" Castro v. U.S. Dep't of Homeland Sec., 835 F.3d 422, 427 n.4 (3d Cir. 2016) (citing 8 C.F.R. § 1208.30(g)(2)(iv)(B)),[6] cert. denied sub nom., Castro v. Dep't of Homeland Sec., —— U.S. ——, 137 S.Ct. 1581, 197 L.Ed.2d 705 (2017). This ensuing regulatory process belies the Government's argument that Mendoza's detention remains under § 1225(b)(1), and suggests that detention falls outside that statute's purview in the withholding-of-removal context. As such, we agree with Judge Mehalchick that Mendoza was removed from the expedited procedures of § 1225 when his removal order was reinstated under § 1231(a)(5), and therefore find that Mendoza is not detained under § 1225.

Moreover, we reiterate our holding in Ignacio and further find that although Mendoza's removal order was initially re-

---

**5.** It appears that these regulations were originally promulgated as 8 C.F.R. §§ 208.31 and 241.8, but were re-codified in 2003 respectively as 8 C.F.R. §§ 1208.31, 1241.8. See Cazun, 856 F.3d at 254 n.7. Forms issued by ICE in this case in 2015 appear to be last revised in 2002 and continue to designate the previous regulation sections. (See Doc. 1–6).

**6.** We note that although the Third Circuit cited 8 C.F.R. § 1208.30 in Castro, the more

applicable regulation here is, inter alia, § 1208.31 because the asylum officer did not initially have a "negative credible fear determination," see 8 C.F.R. § 1208.30(g)(2)(iv), but rather determined that Mendoza demonstrated a "[r]easonable fear of persecution" and was subject to a reinstated order of removal under 8 U.S.C. § 1231(a)(5). See 8 C.F.R. § 1208.31.

instated under § 1231(a)(5), his detention in this case, due to his ongoing withholding-of-removal proceedings and the Third Circuit's stay of his removal, is nonetheless governed by § 1226, not § 1231. See Ignacio, 2016 WL 4988056, at *5. We acknowledge the Government's strong objections to the contrary, but add that the Third Circuit's intimation in Castro—that an alien who is found to have a credible fear of persecution and applies for withholding will be referred for non-expedited removal proceedings under 8 U.S.C. § 1229a—appears to support this conclusion that detention during withholding-only proceedings falls under § 1226. We reiterate that, although neither statute—§ 1226 or § 1231—expressly speaks to detention during withholding-of-removal context with any level of precision, § 1226 still appears to us to be "the more logical source of authorization for the detention of aliens currently in withholding-only proceedings." Ignacio, 2016 WL 4988056, at *4. Conversely, we find that Mendoza's continued detention surely does not fit within § 1231(a)(1).[7]

This case highlights the exact reason why detention under § 1226 is appropriate for aliens who are found to have a credible fear of persecution and are undergoing withholding of removal proceedings. Mendoza has continued to be detained by ICE for almost two years without a bond hearing, despite having no criminal record and despite having family members in the United States who are willing to provide a home and financial support for the duration of his withholding proceedings. The Third Circuit has stayed Mendoza's removal, and there exists a real and strong potential for his withholding proceedings to last well into the future. (See Doc. 28 at 10 n.7 (noting comments by Third Circuit panel during oral argument on Mendoza's petition for review that his case "seems to call for a remand")). As we stated in Ignacio, "[p]eriods of detention under section 1226 in excess of one year raise constitutional concerns." Ignacio, 2016 WL 4988056, at *5 (quoting Rodriguez–Celaya v. Attorney General, No. 14-CV-514, 2014 WL 3557133, at *5 (M.D. Pa. July 17, 2014)). In this context, where detention falls under § 1226, "[w]e do not believe that Congress intended to authorize [such] prolonged, unreasonable, detention without a bond hearing." See Diop v. ICE/Home-

---

7. As we noted in Ignacio, a seemingly necessary prerequisite for detention under § 1231(a)(1) is that detention occur during the 90-day "removal period," which "begins on the latest of" either: (1) "The date the order of removal becomes administratively final"; (2) "If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "If the alien is detained or confined (except under an immigration process), the date the alien is released...." 8 U.S.C. § 1231(a)(1)(B)(i)-(iii). Here, we reject the Government's contention that "reinstated removal orders are necessarily administratively final" so as to fall under § 1231(a)(1)(B)(i). (See Doc. 24 at 5). Although the removability of Mendoza may not be at issue in his withholding-only proceedings, the relief afforded under his reinstated removal order is still at issue. Such relief, i.e., to where Mendoza may be removed (whether it be to Honduras or another country), is inextricably connected with, and integral to, removing Mendoza under his reinstated removal order, as can be gleaned from the fact that the Third Circuit has issued an order staying removal in this case during its consideration of Mendoza's petition for review. As the Third Circuit has noted, "every circuit to consider the issue has held that § 1226, not § 1231, governs detention during a stay of removal." Leslie v. U.S. Att'y Gen., 678 F.3d 265, 269 (3d Cir. 2012). As such, whatever administrative finality may have existed at the moment when Mendoza's removal order was reinstated, such finality would appear to have evaporated in the wake of: (1) the asylum officer's subsequent credible fear determination; (2) Mendoza's ongoing withholding of removal proceedings; and (3) the Third Circuit's stay of removal.

land Sec., 656 F.3d 221, 235 (3d Cir. 2011) (finding it "unconstitutional to detain [an alien] for nearly three years under [§ 1226]"). To avoid constitutional concerns regarding his prolonged detention, we find Mendoza's detention during his withholding-of-removal proceedings falls under § 1226. As such, we will grant Mendoza's habeas petition under 28 U.S.C. § 2241, and will order a bond hearing to be conducted by an IJ.

We will also sustain Mendoza's objections that his bond hearing should be held within twenty-one days and that the Government should bear the burden of proof at such a hearing to produce clear and convincing evidence for why Mendoza's continued detention is necessary to fulfill the purposes of the detention statute. (Doc. 26 at 1–3). As is consistent with our prior opinions on the subject, we will order an individualized bond hearing to be held before an IJ within twenty-one days of this court's memorandum and opinion; at that bond hearing, the Government will be required to produce "clear and convincing evidence" for justifying the necessity of Mendoza's continued detention. See Guerrero Sanchez v. Sabol, No. 1:15-CV-2423, 2017 WL 569176, at *2 (M.D. Pa. Feb. 13, 2017) (Caldwell, J.) ("[T]his court has found that the appropriate level of proof required from the government in these bond determinations is clear and convincing evidence of risk of flight or danger to the community."); Guerrero Sanchez v. Sabol, No. 1:15-CV-2423, 2016 WL 7426129, at *5–6 (M.D. Pa. Dec. 23, 2016) (Caldwell, J.) (citing Lora v. Shanahan, 804 F.3d 601, 616 (2d Cir. 2015), and Singh v. Holder, 638 F.3d 1196, 1205–06 (9th Cir. 2011)); see also Walters v. Rowley, No. 1:CV-16-2361, 2017 WL 478496, at *1 (M.D. Pa. Feb. 6, 2017) (Caldwell, J.) (ordering bond hearing within twenty-one days); Kennedy v. Rowley, No. 1:CV-16-2347, 2017 WL 440277, at *1 (M.D. Pa. Feb. 1, 2017) (same).

## IV. Conclusion

Luis Javier Mendoza–Ordonez has been detained for almost two years by ICE without a bond hearing, despite having no criminal record and despite having family in the United States who appear willing to act as custodians during his ongoing withholding-of-removal proceedings. We find that Mendoza is entitled to a bond hearing before an immigration judge in the first instance where the government will have the burden of showing by clear and convincing evidence that Petitioner is a flight risk or a danger to the community if it wants to continue his detention. That bond hearing shall be conducted within twenty-one days of the date of the order accompanying this memorandum. Because of this court's concurrent jurisdiction to address federal habeas corpus petitions filed by immigration detainees, we will, however, retain the authority to conduct an individualized bond determination, if necessary. An appropriate order will issue.