Jocelyn OSIAS, Petitioner,

v.

Thomas DECKER, in his official capacity as Field Office Director, U.S. Immigration and Customs Enforcement; John F. Kelly, in his official capacity as Secretary of the U.S. Department of Homeland Security; Jefferson B. Sessions, in his official capacity as Attorney General of the United States, Respondents.

17–CV–02786 (VEC)

United States District Court, S.D. New York.

Signed 07/28/2017

Kara Eileen Neaton, Craig A. Stewart, Arnold & Porter Kaye Scholer LLP, New York, NY, for Petitioner.

Joseph Nicholas Cordaro, U.S. Attorney's Office, New York, NY, for Respondents.

## MEMORANDUM OPINION & ORDER

VALERIE CAPRONI, United States District Judge

Although the Statue of Liberty welcomes to the United States the "huddled masses yearning to breathe free,"[1] Jocelyn Osias ("Petitioner") was not so lucky.

Petitioner fled Haiti and sought asylum from the United States. Instead of embracing him, the United States put him in jail in October 2016 and has refused to grant him an individualized bond hearing since. Osias petitions for a writ of habeas corpus seeking an individualized bond hearing. For the following reasons, Petitioner, who has been imprisoned for over nine months, must be promptly given an individualized bond hearing.[2]

## BACKGROUND

The material facts in this case are few and undisputed. On October 12, 2016, Petitioner, a 34–year old Haitian citizen, presented himself at the U.S.–Mexico border in California, seeking asylum. Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Pet.") ¶¶ 1, 31, Dkt. 1. Over a month later, on December 8, 2016, an asylum officer interviewed Petitioner and found him to have a "credible fear of torture" if he returned to Haiti. Pet. ¶ 32; Pet. Ex. A (Form I–870) at 5–7. Petitioner was served with a Notice to Appear ("NTA"), the charging document used to commence removal proceedings, pursuant to which he was charged as an "arriving alien" without valid entry documents. Pet. Ex. B. Petitioner was then placed in removal proceedings in New York, New York. Pet. ¶ 13.

Petitioner has been imprisoned since he presented himself on October 12, 2016, and remains in U.S. Immigration and Customs Enforcement ("ICE") custody in jail pending resolution of his removal proceedings. Pet. ¶¶ 1, 3. On April 18, 2017, Osias filed an application for asylum, withholding of

---

1. Statue of Liberty, NATIONAL PARK SERVICE, https://www.nps.gov/stli/learn/historyculture/colossus.htm.

2. The relevant statute use the term "detain" rather than "imprison." The softer import of detain does not change the hard reality: individuals "detained" by the immigration authorities are confined in prison settings. To reflect this reality, the Court uses "detained" and "imprisoned" interchangeably throughout this opinion.

removal and relief under the Convention against Torture. *See* Pet. ¶ 36. The merits hearing for Petitioner's asylum application is scheduled for July 28, 2017. Respondents' Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opp.") 4, Dkt. 12.

On April 28, 2017, Osias filed this habeas petition ("Petition"), arguing that his imprisonment without a bond hearing violates the Due Process Clause. Dkt. 1. After Osias filed this Petition, ICE granted him discretionary parole, conditioned on payment of a $5,000 bond. Dkt. 15. Unfortunately, Petitioner has been unable to post the $5,000 bond and therefore remains in jail. Dkt. 15.

■ For the reasons stated herein, the Court concludes that Petitioner's prolonged imprisonment, which has exceeded nine months without any individualized assessment of the risk that he will flee, violates due process. Accordingly, the Court orders that Petitioner be given an individualized bond hearing.[3]

## DISCUSSION

Petitioner makes two arguments for why he is entitled to an individualized bond hearing, one statutory and one constitutional. As a statutory matter, Petitioner argues that he is being detained pursuant to 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225(b) as the Government contends. As a constitutional matter, Petitioner argues that even if his detention were pursuant to Section 1225(b), his prolonged imprisonment without a bond hearing, which has now exceeded nine months, violates the Due Process Clause. For the following reasons, the Court holds that Osias's prolonged detention, which has exceeded nine months, violates the Due Process Clause, and that Osias must be promptly given an individualized bond hearing.

## I. Statutory Framework

The parties dispute the statutory provision governing Petitioner's detention. According to the Government, Petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii), which provides that an alien with a credible fear of persecution "shall be detained for further consideration of the application for asylum." Petitioner argues that once he was determined to have credible fear, the authority *vel non* for his detention, which Petitioner acknowledges was initially pursuant to Section 1225(b)(1)(B)(ii), became Section 1226(a). That shift in authority is important because Section 1226(a) authorizes immigration judges to review custody decisions made by ICE and grant release from detention, *see* 8 C.F.R. § 1003.19(a), but no analogous authorization exists for detentions governed by Section 1225(b).

The Government does not dispute that individualized bond hearings are available for immigrants detained pursuant to Section 1226(a), but it contends that Petitioner is being detained pursuant to Section 1225(b)(1)(B)(ii). The Government argues that Section 1225(b)(1)(B)(ii) unambiguously authorizes the mandatory detention of an immigrant such as Petitioner. Section 1225(b)(1)(B)(ii) provides, "If the officer

---

3. The Supreme Court is currently considering *Jennings v. Rodriguez*, No. 15–1204, which presents the question of whether arriving aliens (including asylum–seekers) subject to mandatory detention under 8 U.S.C. § 1225(b) must be afforded bond hearings if their detention exceeds six months. The Second Circuit has stayed cases pending *Jennings*. *See, e.g., Arias v. Aviles*, No. 16–3186 (2d Cir. filed Sept. 12, 2016). Although this Court might normally be inclined to stay the case pending the Supreme Court and Second Circuit's consideration of the very legal issue presented by the Petition, the prolonged deprivation of Petitioner's liberty, without any individualized assessment of the risk that he will flee, warrants immediate review.

determines at the time of the interview that an alien has a credible fear of persecution . . . the alien *shall be detained* for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added).

Petitioner argues that Section 1225(b)(1)(B)(ii) governed Petitioner's detention only up until the time he was adjudged to have credible fear; otherwise, the statutory provision titled "mandatory detention" and authorizing an immigrant's detention "pending a final determination of credible fear of persecution" would be superfluous. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed"). According to Petitioner, after he passed the credible-fear interview and was charged with the NTA, he was placed in general removal proceedings under Section 1226(a), which provides for an alien's detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

The Court declines to resolve at this time the statutory question of whether Petitioner is being held pursuant to Section 1225(b) or Section 1226(a). In general, "[p]rinciples of judicial restraint" caution against "reaching constitutional questions when they are unnecessary to the disposition of a case." *Anobile v. Pelligrino*, 303 F.3d 107, 123 (2d Cir. 2002); *see also Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."). But here, it is clear that even resolving the statutory question in the Government's favor would not dispose of this case.[4] For the purposes of this opinion, the Court assumes that the Government is correct that the Petitioner is being held pursuant to Section 1225(b)(1)(B)(ii).[5] Nevertheless, because Petitioner has been held for more than nine months without an individualized bond hearing, his continued imprisonment violates due process. To avoid constitutional concerns, 8 U.S.C. § 1225(b)(1)(B)(ii) must be read to include a six-month limitation on the duration of detention without an individualized bond hearing.

## II. *Lora* Extends to Section 1225(b)(1)(B)(ii)

In general, 8 U.S.C. § 1225(b) governs the inspection of immigrants seeking "admission" to the United States.[6] An immigrant seeking admission includes "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Section 1225(b)(1) governs the "[i]nspection of aliens arriving in the United States and

---

**4.** Of course, if the Government admits that Petitioner is being held pursuant to Section 1226(a), then Petitioner must be promptly given an individualized hearing before an immigration judge. *See* 8 C.F.R. § 1003.19(a) ("Custody and bond determinations made by [ICE] . . . may be reviewed by an Immigration Judge. . . .").

**5.** The Court notes that The Honorable Paul Engelmayer ruled in favor of the Government on this question. *See* Tr. 45, ECF 16, *Sammy v. Decker*, 17 CV 2615 (PAE) (May 25, 2017)

("The Court rejects Mr. Sammy's statutory construction. Mr. Sammy's detention is squarely governed by Section 1225(b). The statute clearly covers aliens who, like Mr. Sammy, arrive in the United States at the U.S. border and seek admission based on a fear of persecution.").

**6.** "Admission" is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

certain other aliens who have not been admitted or paroled," which includes asylum-seekers such as Petitioner. Section 1225(b)(2) governs the "[i]nspection of other aliens," which includes Lawful Permanent Residents ("LPRs") and nonresident immigrants. *Cf. Saleem v. Shanahan*, No. 16-CV-808, 2016 WL 4435246 (S.D.N.Y. Aug. 22, 2016). According to the Government, Petitioner is being detained pursuant to Section 1225(b)(1)(B)(ii), which provides: "If the officer determines at the time of the interview that an alien has a credible fear of persecution ... the alien shall be detained for further consideration of the application for asylum."

In considering the constitutionality of the prolonged imprisonment of an LPR pursuant to Section 1225(b)(2)(A),[7] the Undersigned concluded that "to avoid constitutional concerns, section 1225(b) must be read to include a six-month limitation on the length of detention of an LPR without an individualized bond hearing." *Morris v. Decker*, 17–CV–02224 (VEC), 2017 WL 1968314, at *3 (S.D.N.Y. May 11, 2017), *appeal docketed*, No. 17–2121 (2d Cir. filed July 7, 2017). This Court based its decision on *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), which held that mandatory detention pursuant to 8 U.S.C. § 1226(c) for longer than six months without a bond hearing violates the Due Process Clause. For the reasons thoughtfully discussed by Judge Abrams in *Arias v. Aviles*, No. 15-CV-9249 (RA), 2016 WL 3906738 (S.D.N.Y. July 14, 2016), this Court extended the Second Circuit's *Lora* decision to an LPR detained pursuant to 8 U.S.C. 1225(b)(2)(A) as an "arriving alien." *See Morris*, 2017 WL 1968314, at *3–4 (discussing *Arias*).

Like the *Morris* petitioner, Osias is also charged as an "arriving alien," which means "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q). Unlike the *Morris* petitioner, however, Osias is not an LPR, but an asylum seeker. As such, his detention, according to the Government, is not governed by Section 1225(b)(2)(A), which governed the *Morris* and *Arias* petitioners' detentions, but rather is governed by Section 1225(b)(1)(B)(ii).

■ Neither party argues that the "shall be detained" directive contained in Section 1225(b)(2)(A) has a different meaning from the "shall be detained" directive contained in Section 1225(b)(1)(B)(ii). Indeed, it would make little sense to interpret identical phrases differently when applied to different provisions of the same statute. A statute "should not be read as a series of unrelated and isolated provisions.... [T]he 'normal rule of statutory construction' [is] that 'identical words used in different parts of the same act are intended to have the same meanings.'" *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (quoting *Dep't of Revenue of Ore. v. ACF Indus., Inc.* 510 U.S. 332, 342, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994)).

The question for the Court is whether *Lora*'s six-month limitation on imprisonment without an individualized bond hearing extends to a nonresident arriving alien, such as Petitioner. In *Saleem v. Shanahan*, No. 16-CV-808 (RA), 2016 WL 4435246 (S.D.N.Y. Aug. 22, 2016), *appeal docketed*, No. 16–3587 (2d Cir. filed Oct. 21, 2016), Judge Abrams extended *Arias*,

---

**7.** 8 U.S.C. § 1225(b)(2)(A) provides, in relevant part, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." Section 1229a contains provisions regarding "proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229(a)(1).

which concerned an LPR, and held that the six-month limitation on detention also applied to nonresident arriving aliens detained pursuant to Section 1225(b)(2)(A). *Saleem*, 2016 WL 4435246, at *5.[8] In so holding, *Saleem* relied on *Clark v. Martinez*, 543 U.S. 371, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005), which concluded that the same immigration detention statute could not be construed differently depending on the detained alien's immigration status. *Id.* at *4. "To interpret the statute one way for LPRs and another way for non-resident arriving aliens 'would render [the] statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case.'" *Id.* (quoting *Clark*, 543 U.S. at 382, 125 S.Ct. 716).

*Saleem* found persuasive the Ninth Circuit's reasoning in *Rodriguez v. Robbins* (hereafter, "*Rodriguez II*"), 715 F.3d 1127 (9th Cir. 2013), which construed Section 1225(b) to include a six-month limitation on detention to avoid constitutional concerns.[9] *Rodriguez II* rejected the Government's reliance on *Shaughnessy v. United States ex rel. Mezei* ("*Mezei*"), 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953), which held that aliens seeking initial entry were entitled to fewer constitutional protections than those who already had entered the United States:

> [A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness en-

compassed in due process of law.... But an alien on the threshold of initial entry stands on a different footing: Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.

*Mezei*, 345 U.S. at 212, 73 S.Ct. 625 (internal quotation marks omitted).[10] *Rodriguez II* concluded that *Mezei* was inapposite because it was decided under a prior immigration statutory regime that considered immigration in terms of "entry" and "exclusion," rather than the current statutory regime's consideration of "admission." *Rodriguez II*, 715 F.3d at 1140–41 (discussing the replacement of the Immigration and Nationality Act ("INA") with the Illegal Immigration and Immigrant Responsibility Act of 1996 ("IIRA")); *see also id.* at 1141 (IIRA replaced the INA's term of "excludability" with "inadmissibility"). In addition, *Rodriguez II* reasoned that in light of *Clark*, Section 1225(b) must be construed to consider the due process rights of LPRs returning after a brief period overseas; such LPRs are entitled to the same due process protections as LPRs physically present within the United States (and do not fall within the ambit of *Mezei*'s lesser constitutional protections for aliens seeking initial entry). *Id.* at 1141–42. Therefore, *Rodriguez II* concluded that to avoid constitutional concerns, Section 1225(b) must be construed to incorporate a six-month limitation. *Rodriguez v. Robbins* (hereafter, "*Rodriguez III*"), 804 F.3d at 1060, 1082–83 (9th Cir.

---

**8.** In *Saleem,* Judge Abrams did not distinguish between Section 1225(b)(2)(A) and Section 1225(b)(1)(B)(ii), but rather referred to the detention statute as "section 1225(b)." Nevertheless, the facts in *Saleem* make clear that Saleem's detention was pursuant to Section 1225(b)(2)(A).

**9.** *Rodriguez II* is the only Court of Appeals case to have considered the due process implications of mandatory indefinite detention pursuant to Section 1225(b).

**10.** *Mezei* established the "entry fiction" that "although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Rodriguez II*, 715 F.3d at 1140 (citing *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir. 1995) (discussing *Mezei*)).

2015) (citing *Rodriguez II*, 715 F.3d at 1142).[11]

· The Government argues that *Rodriguez II* is distinguishable because *Rodriguez II* was a class action that required consideration of the constitutional protections for "the class's most sympathetic member," which included LPRs. Opp. 16. Because Petitioner is not an LPR, the Government argues, the Court need not consider the due process implications for `LPRs detained` pursuant to Section 1225(b). Opp. 16. Similarly, the Government argues that *Saleem* was incorrectly decided because Section 1225(b) usually does not govern the detention of returning LPRs, and, in any event, even if a returning LPR were treated as an arriving alien, the detention of that alien for a period of 21 months as in *Mezei*. Opp. 19–20. The Government further asserts that *Saleem* relied on unreported decisions relating to an immigration detention regime that is no longer in effect. Opp. 20–21.

The Government's arguments are unavailing. In light of *Clark*'s instruction that "where one possible application of a statute raises constitutional concerns, the statute as a whole should be construed through the prism of constitutional avoidance," *see Rodriguez II*, 715 F.3d at 1141 (citing *Clark*), the fact that Section 1225(b) does not *usually* concern returning LPRs does not foreclose this Court from construing the statute to avoid constitutional concerns. Similarly, the fact that Petitioner is not an LPR does not save the statute from its unconstitutional implications, for the same statute must be construed similarly as applied to all categories of immigrants captured under the statute. *Saleem*, 2016 WL 4435246, at *4 (citing *Clark*). Moreover, and as discussed by *Rodriguez II*, *Mezei* is inapposite because the statutory scheme considered in *Mezei* is no longer in force and effect; the category of "excludable aliens" that was considered in *Mezei* was eliminated by the passage of the IIRA, the statute implicated by Osias's petition.

Therefore, this Court joins Judge Abrams in holding that *Lora* extends to the prolonged detention of a nonresident immigrant imprisoned pursuant to Section 1225(b) without an individualized bond hearing. Because *Lora* extends to Section 1225(b)(2)(A), *Saleem*, 2016 WL 4435246, at *5,[12] and Section 1225(b)(2)(A) and Section 1225(b)(1)(B)(ii) must be read consistently because both include the identical "shall be detained" directive, the Court holds that *Lora* also extends to Section 1225(b)(1)(B)(ii). Thus, the detention of an asylum-seeker such as Petitioner pursuant to Section 1225(b)(1)(B)(ii) for longer than six months without an individualized bond hearing violates due process. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) (holding that 8 U.S.C. § 1225(b)(1)(B)(ii) "do[es] not authorize [the petitioner's] indefinite detention").[13]

---

**11.** *Rodriguez II* noted that Section 1225(b) provided for mandatory detention under both Section 1225(b)(2)(A) and Section 1225(b)(1)(B)(ii), but, in reaching its holding, *Rodriguez II* did not distinguish between those two provisions; rather, *Rodriguez II* concluded that Section 1225(b), generally, must be construed to impose a six-month limitation to avoid constitutional concerns. *See Rodriguez II*, 715 F.3d at 1132.

**12.** Although *Saleem* involved an immigrant detained pursuant to Section 1225(b)(2)(A), the Government does not argue that *Saleem* should be distinguished because it concerned Section 1225(b)(2)(A) rather than Section 1225(b)(1)(B)(ii), and the Court would not find such an argument to be persuasive for the reasons discussed above.

**13.** Judge Engelmayer similarly held that for the reasons discussed by Judge Abrams in *Arias* and *Saleem*, *Lora*'s six-month limitation extends to an asylum-seeker detained pursuant to Section 1225(b)(1)(B)(ii). Tr. 48–51, ECF 16, *Sammy v. Decker*, 17 CV 2615 (PAE) (May 25, 2017).

### III. The Political Branches' Plenary Power over Immigration

As in *Morris*, the Government argues that "the political branches' broad power over immigration is at its zenith at the international border" and that "[t]he power to admit or exclude aliens is a sovereign prerogative vested in the political branches" that is entitled to deference. Opp. 10 (internal quotation marks and citations omitted). The Government also argues, as it did in *Morris*, that the Court should not upset Congress's "detailed statutory scheme" that provides immigrants with different immigration statuses with "varying degrees of process" on issues of admission and detention. Opp. 13. The Government further contends, as it did in *Morris*, that the availability of discretionary parole "lessens any possible due process concerns." Opp. 16–17. The Court rejects these arguments for the same reasons discussed in *Morris*. *See Morris*, 2017 WL 1968314, at *4–5.

In addition, although dicta in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), suggested that the entry of an alien into the United States might invoke different political considerations so as to "leave no 'unprotected spot in the Nation's armor,'" *Zadvydas*, 533 U.S. at 696, 121 S.Ct. 2491 (citation omitted), this Court's holding granting Petitioner a bond hearing will not effect Petitioner's entry into the United States; whether Petitioner is admitted remains at the discretion of the executive branch's representative, the immigration officer who will consider Petitioner's application. *See* 8 U.S.C. § 1101(a)(13)(A) (the term "admission" means, "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."). In addition, any release pursuant to a bond hearing will be subject to mandatory supervision upon release requirements. *See Zadvydas*, 533 U.S. at 696, 121 S.Ct. 2491 ("The choice ... is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated.").

### IV. Petitioner's Detention Violates Due Process

The Government argues that Petitioner's detention does not violate due process because his detention serves a valid statutory purpose of ensuring Petitioner's appearance at his removal proceedings, as well as his availability for removal. Opp. 23. The Court, however, is not questioning the Government's authority to detain Petitioner; rather, the Court's concern is with the length of Petitioner's detention without an individualized bond hearing. The Court finds nothing in Section 1225(b) "that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention." *See Zadvydas*, 533 U.S. at 699, 121 S.Ct. 2491.

Lastly, the Court notes that the circumstances particular to this Petitioner heighten the due process concerns in this case. The Court has been presented with no facts that would warrant a legitimate concern that Osias may not appear at his removal proceedings. Osias is seeking asylum in the United States because he is afraid that he will be tortured if he is sent back to Haiti; he is unlikely to jeopardize his opportunity to receive asylee status in the United States by absconding. Indeed, because discretionary parole is available only if, among other things, "the alien presents neither a security risk nor a risk of absconding," Dkt. 14 at 3 (ICE letter granting parole), the fact that Osias was *granted* parole, albeit with financial conditions he is unable to meet, implies that the Government, too, is not really concerned that Petitioner will abscond.

Whether Petitioner is actually released on bond or granted admission to the United States is at the discretion of the immigration judge. But his detention, which has exceeded nine months, without an individualized bond hearing violates the core protections guaranteed by the Due Process Clause. *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

## CONCLUSION

For the foregoing reasons, the Court holds that Petitioner's detention, which has exceeded nine months without an individualized bond hearing, violates due process. The Government is ORDERED to provide Osias with an individualized bond hearing not later than **August 11, 2017.**

Mr. Osias's Petition is GRANTED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**